# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41410

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2015

Lyle W. Cayce
Clerk

RUBEN NAVARRO; GLORIA MARTINEZ; YOLANDA ALVARADO; RAMIRO TREVINO; MINERVA J. NAVARRO, Individually; RUBEN BRANDON NAVARRO; MEAGAN V. NAVARRO; PRESTON R. NAVARRO; JUAN LUIS ALVARADO, SR.; SANDY ALVARADO

> Plaintiffs - Appellants

v.

CITY OF SAN JUAN, TEXAS; CHIEF JUAN GONZALEZ, In his Individual Capacity and Official Capacity and as Agent of the City of San Juan; HUMBERTO (BOBBY) RODRIGUEZ, City Secretary in his Individual Capacity and Official Capacity as City Secretary and Agent of the City of San Juan; SERGEANT RODOLFO LUNA, In his Individual Capacity and In his Official Capacity as a Police Officer and Agent of the City of San Juan;   J. JERRY MUNOZ, Individually and In his Official Capacity as the City Attorney of the City of San Juan

> Defendants - Appellees

---

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 7:12-CV-66

---

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41410

Plaintiffs Ruben Navarro, Gloria Martinez, Yolanda Alvarado, Ramiro Trevino, Minerva J. Navarro, Juan Luis Alvarado, Sr., and Sandy Alvarado appeal the district court's grant of summary judgment for Defendants in this 42 U.S.C. § 1983 case. For the reasons that follow, we AFFIRM.[1]

## FACTS AND PROCEEDINGS

Pursuant to § 1983, Plaintiffs filed the present lawsuit against six Defendants,[2] alleging violations of their First, Fourth, Fifth, and Fourteenth Amendment rights. Four of the Plaintiffs, Ruben Navarro, Gloria Martinez, Yolanda Alvarado, and Ramiro Trevino (collectively, "Recall Plaintiffs") initiated a recall petition demanding the removal of four city commissioners for the city of San Juan, Texas, "due to inefficiency and mismanagement of city affairs." The city charter detailed the requirements and procedures for submitting a valid recall petition, providing that "[t]he people of the City reserve the power to recall any elected officer of the City and may exercise such power by filing with the City Secretary a petition signed by at least 10% of qualified voters in the last City election." The city charter provided that "[n]o signature shall be counted where there is reason to believe it is not the actual signature of the purported signer or that it is a duplication of name and no signature shall be counted unless the residence address of the signer is shown." Significantly, the city charter also required that the "circulator" of the petition

---

[1] Defendants challenge this court's jurisdiction over the appeal, contending that the Plaintiffs did not file a timely notice of appeal and did not show excusable neglect or good cause for failing to do so. However, Plaintiffs filed a timely motion for an extension of time to file a notice of appeal, s*ee* Fed. R. App. P. 4(a)(5)(A), which the district court granted. Because we find that the district court did not abuse its discretion in granting the motion for extension, we have jurisdiction over this appeal. *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 920 (5th Cir. 2007) ("This court reviews a district court's ruling on a Rule 4(a)(5) motion based on a determination of excusable neglect for an abuse of discretion.").

[2] In previous versions of the complaint, Plaintiffs asserted claims against Defendants who were subsequently dropped from the case. In Plaintiffs' Sixth Amended Complaint, six Defendants were named. After filing the Sixth Amended Complaint, Plaintiffs settled their claims against Defendant Ricardo Tamez and moved to dismiss him from the lawsuit.

No. 14-41410

attach an affidavit verifying that "he, and he only, personally, circulated the foregoing paper, that it bears a stated number of signatures[,] that all signatures appended thereto were made in his presence, and that he believes them to be the genuine signatures of the persons whose names they purport to be."  Finally, the city charter provides that "[w]ithin thirty (30) days after . . . [a] petition is filed, the City Secretary shall determine whether the name is properly signed by the requisite number of qualified voters."

On December 3, 2010, the Recall Plaintiffs submitted the petition, with 1,438 signatures, to the Defendant City Secretary Humberto Rodriguez.  Each of the Recall Plaintiffs executed the requisite authenticity affidavit, attesting that they circulated the petition and that all signatures were made in their presence, and had the affidavits notarized by former-Plaintiff Notary Elisa Sanchez.  Despite these representations, Plaintiffs assert that "a private individual," J.J. Garcia, assisted them in gathering the signatures.  J.J. Garcia gathered at least some of the signatures by telling people that they were signing a petition related to a taco food truck.  Plaintiffs allege that J.J. Garcia conspired with the Defendants to undermine the recall petition by volunteering to help them gather signatures but then gathering those signatures through lies and deceit.

After the recall petition was submitted, Plaintiffs allege that City Secretary Rodriguez forwarded the list of signatures to Defendant City Attorney Munoz, in contravention of the city charter.  Rodriguez acknowledges that when he received the recall petition, he contacted City Attorney Munoz to discuss what they should do.  After consulting with Munoz, they both decided that it would be best to seek independent, outside legal counsel.  Rodriguez reached out to two outside attorneys, one of whom he considered to be "an expert in these kind of petitions."  After receiving advice from legal counsel, Rodriguez reviewed the list of petition signatures, and compared them to the

No. 14-41410

Secretary of State election website to determine whether the signers were registered voters. Outside legal counsel, Bradford Bullock, separately reviewed the signatures and then Rodriguez and Bullock compared the results. Both Rodriguez and Bullock reached the conclusion that the petition lacked the requisite number of qualified voter signatures.

According to the city charter, if the City Secretary determines that the petition is insufficient, "the City Secretary shall notify the person filing the petition and it may be amended within ten (10) days from the date of such notice by filing a supplementary petition upon additional paper signed and filed as provided for in the original petition." By letter dated January 3, 2011, Rodriguez notified Recall Plaintiffs of the deficiency and informed them that they had ten days to file a supplementary petition. At some point, Recall Plaintiffs submitted seventy-seven additional signatures. Bullock informed Rodriguez that "being as liberal as . . . the most liberal judge would be," and even counting all seventy-seven additional signatures, Recall Plaintiffs still had not obtained the requisite number of signatures. Therefore, Rodriguez notified Recall Plaintiffs on February 14, 2011, that "[p]ursuant to [section] 11.04 of the City Charter the amended petition is found to be insufficient, [and] no further proceedings shall be had with regard to the December 3, 2010 recall petition."

During Rodriguez's examination of the signatures, some of the Commissioners who were the subject of the recall petition looked at the list of names. The Commissioners informed Munoz that the petition contained signatures of friends and relatives, whom they believed would never knowingly sign such a document. Munoz subsequently hired a private investigator, former-Defendant Tamez, to conduct an investigation into the validity of the signatures. Before becoming a private investigator, Tamez worked for the McAllen Police Department for eighteen years. Tamez testified that his

4

assignment was to canvas recall-petition signatures to determine if the petition had been done correctly—that the signers were registered voters in San Juan, read the petition, and signed in the presence of the circulator, among other requirements. Munoz provided Tamez with affidavit forms, which listed certain statements about the signer's knowledge, or lack of knowledge, regarding the petition. According to Munoz, the signers could choose to sign the affidavit, not sign the affidavit, or "scratch off those portions with which he or she did not agree."

Tamez investigated the petition from about December 8 to December 23, 2010. Tamez interviewed sixty petition signers and obtained fifty-two affidavits indicating non-compliance with the city charter provisions. The affidavits indicated that some of the signers did not sign in the presence of the circulator and some were "misled or misinformed" about the petition. Tamez stated that "it was evident that the citizens I interviewed and took affidavits from were misled, lied, deceived, their signatures were forged and some never met with the circulators who signed a sworn affidavit indicating they had met with them in person. In certain cases the petitions were circulated by a friend, neighbor or family member . . . ."

On January 4, 2011, there was a city meeting at which City Attorney Munoz informed Defendant Police Chief Gonzalez that a recall petition had been submitted, which contained potentially forged signatures and signatures obtained through lies. Gonzalez subsequently met with Defendant Sergeant Luna and told Luna to look into these allegations. Luna received copies of the Tamez affidavits and called some of the affiants to confirm that they had signed the affidavits and that the information in them was correct. Luna discussed his investigation with Assistant District Attorney Paul Tarlow, who advised him to pursue felony charges against the Recall Plaintiffs. Luna also

5

spoke with Chief Gonzalez, who "cleared" the case to be presented to the judge after he found out that Luna had already met with the district attorney.

On January 30, 2011, Luna met with Magistrate Judge Perez and presented him with complaints and warrants for the Recall Plaintiffs' arrests. After reviewing all of the documents and talking with Luna for about one hour, Perez signed the warrants. Each of the Recall Plaintiffs was charged with multiple counts of knowingly making a false entry in a government record, and knowingly presenting a document that included signatures with knowledge of falsity. The Recall Plaintiffs were subsequently arrested. On September 14, 2011, a grand jury subsequently returned a "no bill" on the charges against the Recall Plaintiffs.

On January 30, 2012, Plaintiffs filed the present lawsuit in Texas state court against various city officials, which was later removed to federal court. In the Sixth Amended Complaint, Plaintiffs alleged that the City of San Juan was liable based on a municipal policy.[3] Plaintiffs alleged that "all the Defendants conspired with one another to bring about the wrongful arrest of Recall Plaintiffs and Plaintiff Elisa Sanchez, causing them great mental and emotional anguish, suffering, distress, humiliation and damages." Each of the individual Defendants filed a motion for summary judgment, asserting the defense of qualified immunity. In five separate orders, the district court granted summary judgment to the Defendants.[4] The district court evaluated the Plaintiffs' claims for § 1983 conspiracy as well as their claims against

---

[3] On appeal, Plaintiffs have abandoned this argument, conceding that "[t]he contention that the City had such a custom or policy is not supported by the record" and that the district court correctly granted summary judgment to the City on that theory.

[4] As to Defendant Luna, the district court granted in part and denied in part, denying summary judgment as to Plaintiff Notary Sanchez's claim for wrongful arrest. Defendant Luna and the City of San Juan subsequently settled with Sanchez. Plaintiff Elisa Sanchez and her husband Cesar J. Sanchez are not pursuing this appeal.

No. 14-41410

individual Defendants under the Fourth Amendment and the First Amendment. The district court determined that each of the defendants was entitled to qualified immunity and that the Plaintiffs failed to put forth evidence of an issue of material fact necessary to survive summary judgment. We agree.

## STANDARD OF REVIEW

"We review the district court's summary judgment decision de novo, applying the same standards as the district court." *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the burden to show the absence of a genuine dispute as to a material fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (5th Cir. 1994)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant meets this burden, the burden shifts to the nonmovant to show that there is a genuine issue for trial. *Liquid Air Corp.*, 37 F.3d at 1075. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (citations and internal quotation marks omitted). "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

Each of the remaining individual defendants asserted the defense of qualified immunity. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violated the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (citation and internal quotation marks

omitted).  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Id.* at 2080.  "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002); *see also Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005) ("The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity.").

## DISCUSSION

On appeal, Plaintiffs do not present a coherent theory of liability, making it difficult to evaluate their claims.  Plaintiffs proceed only on their Fourth Amendment false arrest claim and have abandoned all other theories of liability.[5]  *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").  Before addressing each individual Defendant, Plaintiffs contend that because they "asserted a civil conspiracy," they did not "have to allege specific acts or adduce proof of specific acts by [the Defendants]."  Plaintiffs assert that they "show[ed] that the City Secretary, the City Commission, the City Attorney, and the police-types all acted together to defeat the recall petition.  This proof of concerted action precluded summary judgment."

As this court has explained, "[u]nder § 1983 conspiracy can furnish the conceptual spring for imputing liability from one to another"; however, "it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient."  *Villanueva v. McInnis*, 723 F.2d 414, 418

---

[5] Other than in their introductory argument, urging the panel to adopt a more stringent summary judgment standard in "political free speech cases," which we will address below, Plaintiffs do not mention the First Amendment.

(5th Cir. 1984).  Therefore, in order to succeed on a § 1983 conspiracy claim, a plaintiff must show: 1) an agreement between the alleged conspirators to commit an illegal act, and 2) an actual deprivation of constitutional rights.  *See Cinel*, 15 F.3d at 1343.  Plaintiffs here have shown neither.[6]

"The Fourth Amendment ensures that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.'"  *Club Retro, LLC v. Hilton*, 568 F.3d 181, 195 (5th Cir. 2009).  The constitutional claim of false arrest, in violation of the Fourth Amendment, requires a showing that there was no probable cause.  *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) ("The Fourth Amendment requires that an arrest be supported by properly issued arrest warrant or probable cause.").  "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Officers will be entitled to qualified immunity for an arrest "if a reasonable person in their position could have believed he had probable cause to arrest."  *Glenn*, 242 F.3d at 313 (citation and internal quotation marks omitted).

---

[6] While we decide this case on the ground that Plaintiffs have not demonstrated that their Fourth Amendment rights were violated, we note also that, as the district court found, Plaintiffs' evidence of an agreement between Defendants is insufficient.  *See McAfee v. 5th Cir. Judges*, 884 F.2d 221, 222 (5th Cir. 1989) ("It is now well settled in this Circuit that mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy." (citation and internal quotation marks omitted)).

No. 14-41410

Before the district court, "Plaintiffs had not attempted to argue that Luna lacked probable cause to request warrants for Recall Plaintiffs' arrests." In fact, as the district court explained, "[w]ith the exception of [Plaintiff] Notary Sanchez, Plaintiffs do not challenge Luna's . . . sworn statement of probable cause in each of the complaints." Because of this court's "general rule . . . that arguments not raised before the district court are waived on appeal," *Balentine v. Thaler*, 626 F.3d 842, 848 (5th Cir. 2010), the fact that the Plaintiffs did not contest probable cause before the district court should end our analysis. Even if we were to consider Plaintiffs' new arguments on appeal, however, they would still fail.

Crucially, Plaintiffs do not challenge the finding of Tamez's investigation and Defendant Luna's interviews, that some of the signatures on the submitted recall petition were obtained improperly. Plaintiffs do not attempt to contest probable cause until page forty-four of their brief, when they claim that "Gonzalez did not train Luna on probable cause." They assert that a recall petition is not a government document and, therefore, one of the elements of the crime—tampering with a government document—was missing. Plaintiffs cite two cases, one from the Supreme Court of Washington and one from the Supreme Court of Nebraska, which they contend prove that a recall petition is not a government document in Texas. First, neither of these cases stands for the proposition that Plaintiffs assert. In fact, the language that Plaintiffs purport to quote from *State ex rel. Lottman v. Bd. of Educ. of Sch. Dist. No. 103*, 268 N.W.2d 435 (Neb. 1978), regarding the filing of a recall petition, does not appear in that case. Second, neither of these cases sheds any light on whether a recall petition is a government document under Texas law. This inapposite caselaw does not demonstrate that Defendant Luna obtained arrest warrants without probable cause. Because Plaintiffs have failed to show, and in fact barely allege, that they were arrested without probable cause, they have

not put forth evidence sufficient to support a Fourth Amendment false arrest claim.  Accordingly, we hold that the district court properly granted summary judgment in favor of Defendants.

Plaintiffs also claim to "advance[] a good-faith argument for a more stringent standard for rendering summary judgment in political free speech cases."  Plaintiffs cite inapplicable caselaw pertaining to pleading standards and motions to dismiss, rather than summary judgment, and compare this suggestion to the more liberal pleading standard that applies to pro se litigants.  Plaintiffs assert that because "Free Speech is the First Article in the Bill of Rights . . . [i]ts priority, its 'firstness', should prompt the Court to consider such a more rigorous measure in political free speech proceedings." *But see Liquid Air Corp.*, 37 F.3d at 1075 ("[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" (citation omitted)). Because Plaintiffs' legal support for its suggestion that the panel adopt a new summary judgment standard for free-speech cases is inapposite, we decline to do so.

## CONCLUSION

For the reasons above, approving of the reasons given by the district court in its thorough orders granting summary judgment to Defendants, we AFFIRM.