E. GRADY JOLLY, Circuit Judge:
Lillie Wheat, a former Juvenile Detention Staff Officer (“JDS Officer”) with the Florida Parishes Juvenile Justice Commission (“the Commission”), appeals from the district court’s summary-judgment dismissal of her employment-discrimination suit. We AFFIRM in part, and VACATE and REMAND in part.
I.
In 2000, Wheat began her employment with the Commission, which operates the Florida Parishes Juvenile Detention Center (“FPJDC”) in the Eastern District of Louisiana. Wheat was eventually promoted to JDS officer, then to Shift Supervisor in 2005, and ultimately to Assistant Director of Female Services in 2008. Additionally, she had received positive reviews and consistent pay raises. In January 2005, however, Wheat was disciplined after she used excessive force against a juvenile inmate. By failing to defuse a hostile situation with the juvenile, or alert other JDS officers, Wheat had allowed the juvenile to get within her reach. Wheat then physically forced the juvenile down to the ground and held her there, violating FPJDC’s guidelines.
In 2009, Wheat took leave under the Family and Medical Leave Act (“FMLA”), 29 U.S.C. § 2601 et seq., to undergo surgery. The Commission terminated her employment for failing to return to work after her FMLA leave had expired. She filed suit under the FMLA. The suit was settled, and her employment at the Commission was reinstated on March 8, 2011. At the time, her previous position as Assistant Director of Female Services was not available. Consequently, she was hired at a lower ranking position as a JDS Officer. However, she was paid the same salary as her previous supervisory position. After being rehired, supervisory positions became available and, on two separate occasions, she was offered advancement to a supervisory position. Wheat turned down both offers because “she did not want to go back on salary and assume additional responsibility,” and “she would lose her right to overtime.”
On November 23, 2011, Wheat filed an “Unusual Occurrence Report” concerning a twelve-year-old female inmate’s alleged inappropriate sexual advances toward Wheat. Wheat’s supervisors met with her on several occasions to discuss the proper methods for handling such' advances. Wheat was dissatisfied with the disciplinary limitations which these models imposed. She requested that the juvenile be placed in administrative segregation. Her requests were denied.
On January 3, 2012, Wheat had another physical episode with a female inmate. Responding to the juvenile’s noncompliant behavior, Wheat applied a “mandibular angle pressure point” hold to the juvenile. Wheat was ordered to cease, and her supervisor had to restrain her. Wheat then had to be restrained a second time. Wheat followed the same juvenile to her cell, and although provoked by the juvenile, further attempted to assault her. Wheat threatened to “whip that bitch’s ass.” Wheat was placed on leave, without pay, for these two eruptions and was shortly thereafter discharged, on January 19, 2012.
*705 After exhausting her remedies with the Equal Employment Opportunity Commission (EEOC), see 42 U.S.C. § 2000e-5, Wheat filed this suit. In her complaint, she alleged that she was discharged in retaliation for having asserted her rights under the FMLA, and under Title VII (for having complained about the juvenile’s sexual advances). She also alleged ten additional retaliatory acts by the Commission, as well as sexual harassment by the juvenile resident. The district court granted summary judgment to the Commission, dismissing Wheat’s complaint. Wheat v. Florida Parishes Juvenile Justice Comm’n, No. 12-2989, 2014 WL 2155239 (E.D.La. May 22, 2014).
II.
We review a grant of summary judgment de novo, applying the same standard as did the district court. E.g., Cuellar v. Keppel Amfels, L.L.C., 731 F.3d 342, 345 (5th Cir.2013). Under that standard, summary judgment is appropriate “if the mov-ant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
III.
It is important to keep in mind that the FPJDC facility is a correctional confinement, primarily for youths who are emotionally challenged, exhibit drug and alcohol problems, mental problems, and suicidal tendencies, which requires supervisors and employees with specialized training and self-control.
The FMLA and Title VII prohibit an employer from discriminating against employees for asserting rights protected under those acts. See 29 U.S.C. § 2615 (forbidding “discrimination] against any individual because such individual,” among other things, “has filed any charge ... under or related to” the FMLA); 42 U.S.C. § 2000e-3(a) (forbidding “discrimination] against” an employee or job applicant because that individual “opposed any practice” made unlawful by Title VII or “made a charge, testified, assisted, or participated in” a Title VII proceeding or investigation).
Wheat does not connect any of the alleged acts of retaliation to a specific protected right, that is, whether the retaliation was under Title VII and/or the FMLA. Retaliation claims under both Title VII and the FMLA, however, are analyzed under the McDonnell Douglas burden-shifting framework. Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999); see also Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir.2001). That framework requires the employee first to set out a prima facie case of retaliation, which she may do by establishing that: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action. See, e.g., Davis v. Fort Bend Cnty., 765 F.3d 480, 489-90 (5th Cir.2014) (Title VII), cert. denied, — U.S. -, 135 S.Ct. 2804, 192 L.Ed.2d 847 (2015); Ion v. Chevron USA Inc., 731 F.3d 379, 390 (5th Cir.2013) (FMLA). The Supreme Court, however, in Univ. of Texas Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), recently held that to satisfy the “causal link” requirement of a Title VII retaliation claim, the employee must provide substantial evidence that “but for” exercising protected rights, she would not have been discharged. See id. at 2533 (“Title VII retaliation claims must be proved according to traditional principles of but-for causation ... [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged *706 wrongful action or actions of the employer.”). Neither this Court, nor the Supreme Court, has decided whether the heightened . “but for” causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims. See Harrelson v. Lufkin Indus., Inc., 614 Fed.Appx. 761, 765 (5th Cir.2015) (“We have yet to decide whether Nassar applies to the FMLA context.”); Castay v. Ochsner Clinic Found., 604 Fed.Appx. 355, 356 (5th Cir.2015) (“Because we concluded that the plaintiffs claim in that case would fail under either [Title VII or FMLA] standard, we did not decide whether the ‘but for’ causation standard should apply in FMLA retaliation cases.”); Ion, 731 F.3d at 390 (“We emphasize that we need not, and do not, decide whether Nassar’s analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation.”). Even so, however, this distinction is largely immaterial because the claims addressed below — with the exception of the termination and harassment claims' — turn on the “materially adverse action” prong of McDonnell Douglas.
A.
Wheat alleges that, before her termination, the Commission retaliated against her on several occasions. Reasoning that only “ultimate employment decisions” can constitute actionable retaliation, the district court held that Wheat had failed to make out a prima-facie case. Wheat, 2014 WL 2155239 at *5-8. On appeal, the parties, as well as the EEOC as amicus, argue that the district court erred by applying our pre-Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), standard to Wheat’s claims.[1] Nonetheless, the Commission argues that it is still entitled to summary judgment because none of the alleged pre-termination actions rises to the level of actionable retaliation under Burlington. We turn, then, to determine whether these retaliation claims survive summary judgment under current law.
We have examined these various retaliation claims and find that most are unsupported by the record and are devoid of merit. We do find that three of these claims merit further discussion: the assignment of “janitorial duties” upon' her rehiring; the denial of a 4% raise as indicated by her performance evaluation; and the denial of her request to be transferred away from a “difficult inmate.”[2]
1.
First, Wheat alleges that an assignment of janitorial duties was a retaliatory, materially adverse action. Such an allegation, however, must do more than make conclusory allegations to create a cognizable issue of fact. See, e.g., Navarro v. City *707 of San Juan, No. 14-41410, 624 Fed.Appx. 174, 177, 2015 WL 5049911, at *3 (5th Cir. Aug. 27, 2015) (“The nonmovant’s burden ‘is not satisfied with some metaphysical doubt as to the material facts, by concluso-ry allegations, by unsubstantiated assertions, or by only a scintilla of evidence.’ ”) (citation omitted); Davis, 765 F.3d at 484 (“A party cannot ‘defeat summary judgment with conclusory allegations.... ’ ”); Browning v. Sw. Research Inst., 288 Fed.Appx. 170, 173 (5th Cir.2008) (“[T]he non-moving party ‘must ... set out specific facts showing a genuine issue for trial.’ The nonmoving party, however, ‘cannot satisfy this burden with conclusory allegations.’ ”) (citation omitted); Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir.2005) (“The pláintiff bears the burden of negating the defense and cannot rest on conclu-sory allegations and assertions but must demonstrate genuine issues of material fact....”); Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir.1988) (“[C]omplaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss.”).
A bare-bones allegation that an assignment of janitorial duties is a materially adverse action is only an unsupported con-clusory claim. Such a bare allegation fails to provide the contextual detail that is required for materially adverse actions. In Burlington, 548 U.S. 53, 69, Í26 S.Ct. 2405, the Supreme Court made clear that context is critical. The Court observed that “[w]hether a particular, reassignment is materially adverse depends upon the circumstances of the particular case.” Id. at 71, 126 S.Ct. 2405. Those circumstances are missing here. Indeed, Burlington illustrated that merely changing an employee’s job title will not suffice to constitute a materially adverse action without further detail. Id. at 70-71, 126 S.Ct. 2405. The Court reasoned that the record evidence indicated that the plaintiff was reassigned to perform “only standard track laborer tasks,” “that the track laborer duties were by all accounts more arduous and dirtier,” and “that the forklift operator position required more qualifications, which is an indication of prestige.” Id. at 58, 71, 126 S.Ct. 2405 (emphasis added) (internal quotation marks omitted). “Based on this record,” the Court said, “a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee.” Id. at 71, 126 S.Ct. 2405 (emphasis added) (internal quotation marks omitted). Here, there is no record evidence that provides any description, whatsoever, of Wheat’s alleged temporary assignment of janitorial duties.
Furthermore, Wheat can find no succor in Wilson v. Monarch Paper Co., 939 F.2d 1138 (5th Cir.1991). There, the employer had reassigned the plaintiff — a former “executive manager” — to a position as “an entry level warehouse supervisor with menial and demeaning duties.” Id. at 1145. We upheld the jury’s finding that this conduct was “extreme and outrageous,” pointing to record evidence regarding the plaintiffs qualifications (he “had been a longtime executive” with the employer and was “responsible for the largest project in the company’s history,” which he completed “on time and under budget”); the. specific nature of the plaintiffs duties as warehouse supervisor (he “was frequently required to sweep the warehouse” and “was reduced to cleaning up after the employees in the warehouse cafeteria after their lunch hour”); and the extent to which his work time was occupied with the menial tasks (‘Wilson spent 75 percent of his time performing these menial, janitorial duties.”). Id. at 1145-46. Wilson also had to perform all of his janitorial duties under a sign that read “Wilson is old.” Id. There is no record here that provides any sug- *708 gestión of Wheat’s duties, time spent, or the humiliation, if any, that she suffered.
Furthermore, nowhere in her complaint does Wheat allege why assignment to janitorial duties was an act of retaliation or an adverse employment action. Before the district court, she alleged “Wheat was initially assigned to perform janitorial work and do intake. A few weeks later, Wheat was assigned to Echo Mod which houses male juveniles. In late April, early May, 2011, Wheat was notified by Donald Carter, Shift Supervisor, that she was being re-assigned to the girls’ mod.” Plaintiffs Statement of Uncontested Fact, Doc. 40-1, ¶ 16. This statement is the complete reference to her assignment of janitorial duties that can be found in the record before the district court. Nothing more. There is no indication that she raised the slightest objection to this assignment. There is no indication of how much time was spent doing these “janitorial duties” as opposed to doing “intake” work. The district court was never told whether she was asked to perform unpleasant “janitorial tasks”' (e.g., cleaning bathrooms), “janitorial tasks” that were, minor in nature (e.g., changing lightbulbs, dusting a few desks, or simply cleaning up her own desk), or, indeed, whether her tasks could reasonably be classified as janitorial at all. Nor was the district court told what portion of Wheat’s work day was devoted to “janitorial duties.” Was it all of her workday (as in Burlington, 548 U.S. at 58, 126 S.Ct. 2405), 75 percent of her workday (as in Wilson, 939 F.2d at 1145), less than 5 minutes per week, or any part of her workday at all? Neither the district court nor we have the slightest idea.
Moreover, the dissent says that on appeal “the Commission admits that janitorial duties were not ‘regular’ duties of line officers.” This alleged statement was never made before the district court; nor was it ever made by Wheat at any time. To be sure, the dissent mischaracterizes the Commission’s. brief in this respect. ■ The Commission actually said:
Moreover, Ms. Wheat has not offered any evidence that her being assigned such chores constituted different treatment from other JDS officers. Ms. Wheat offers no evidence that this short assignment of janitorial and intake duties was anything more than her supervisors finding work for her until regular JDS officer duties became available. This is a legitimate, non-retaliatory motivation. Applying the correct standard to these facts, it becomes apparent that this temporary assignment falls far short of being materially adverse to a reasonable employee in Ms. Wheat’s position.
Appellee’s Brief, p. 14-15. Properly read, the record does not exclude the possibility that some “janitorial duties” were expected of JDS officers generally — but especially those, like Wheat, who had just recently been hired or reinstated.
In sum, Wheat’s mere assignment of janitorial duties, without further description or detail about what those duties actually were, does not state a materially adverse action under Burlington or Wilson. In short, she has failed to meet her burden of making a prima facie case of retaliation.
2.
Next, Wheat alleges that her performance evaluation was untimely and that “[a]ccording to the evaluation, [she] should have received a 4% pay increase.” Although Wheat’s performance evaluation form rated her Overall Job Performance Rating as “Very Good”, the form clearly stated that she was not authorized for a step increase. More importantly, at the conclusion of her performance review, *709 Wheat signed the findings of the review committee as follows:
I have read this evaluation and reviewed a copy of it. I understand that my signature does not constitute or imply my agreement, unless marked so. Should I disagree with this rating, I understand that I my [sic] appeal to the appropriate manager.
ROA.403 (emphasis added).
Wheat also checked the box that read “I have reviewed and agree with this rating.” Id. She did not object to or appeal this evaluation. Further, the record is silent as to why she did not elect to appeal. In short, Wheat produced no evidence to show that the delay in her evaluation or the failure to grant her 4% step increase— accompanied by a right of appeal that she did not exercise — constituted a materially adverse action.
The dissent concludes that it “may be materially adverse when an employee is effectively denied (or delayed by several months) a 4% raise indicated by her performance evaluation.” (Emphasis added). Thus, the dissent, by the use of the word “may”, seems to acknowledge that Wheat has failed to meet her burden of establishing her claim. Furthermore, the dissent asserts that a disputed issue of material fact exists based on the possibility that the Commission’s action “may be materially adverse when an employee is effectively denied ... a 4% raise indicated by her performance evaluation.” (Emphasis added). Even so, as previously indicated, the dissent’s premise is wrong on the record facts. This possibility is not enough to create a material fact or issue of law that bars summary judgment, especially when the underlying premise of such “possibility” appears to be false.
Therefore, Wheat has failed to meet her burden of making a prima facie case of retaliation for this claim.
3.
Next, Wheat alleges that the denial of a transfer request was a retaliatory, materially adverse action. Specifically, Wheat requested the transfer because she objected to working around one particularly disruptive juvenile. As with the janitorial duties, Wheat has presented no evidence that the denial of the reassignment made her job “objectively” worse. See Burlington, 548 U.S. at 71, 126 S.Ct. 2405. It did not “a£fect[] her job title, grade, hours, salary, or benefits,” nor is there any indication that working with females resulted in a “diminution in prestige or change in standing among her co-workers.” See Stewart v. Miss. Transp. Comm’n, 586 F.3d 321, 332 (5th Cir.2009). Additionally, mere denial of a reassignment to a purely lateral position (“no reduction in pay and no more than a minor change in working conditions”), is typically not a materially adverse action. Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir.1999). Furthermore, as the Commission points out, Wheat had worked, apparently without complaint, in the female section for eight years.
Therefore, under these circumstances, the denial of a reassignment was not, as a matter of law, an adverse action. Accordingly, Wheat has not met her burden to establish a prima facie case of retaliation for this claim.
Although the district court erroneously evaluated the Commission’s allegedly retaliatory actions using the now-abrogated “ultimate employment decisions” standard, Wheat’s pre-termination retaliation claims fail even under current law. Thus, we affirm the district court’s grant of summary judgment to the Commission with respect to these retaliation claims.
*710 B.
Finally, we turn to Wheat’s retaliatory termination claim. It is clear that Wheat’s discharge constitutes a “materially adverse action.” See, e.g., Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir.2013) (“It is clear that an adverse employment action occurred here — Royal was fired.”). We thus turn to Wheat’s burden to show a “causal link” between her discharge and exercising her protected rights. Again, it unclear whether the “causal link” requirement for FMLA retaliation claims involves the same “but for” analysis required for Title VII retaliation claims. See Nassar, 133 S.Ct. 2517. It is clear, however, that the plaintiff “may avoid summary judgment on ‘but for’ causation by demonstrating ‘a conflict in substantial evidence on this ultimate issue.’ ” Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 660 (5th Cir.2012) (“Evidence is ‘substantial’ if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.”) (citation omitted). As we shall see, however, here which standard we apply does not affect the outcome because Wheat’s claim survives the heightened showing of “but for” causation. Then, when the plaintiff sets out a prima facie case under McDonnell Douglas, “the burden shifts to the employer to state a legitimate, non-retaliatory reason for” the adverse action. Davis, 765 F.3d at 490 (internal quotation marks omitted).
Initially, however, Wheat, as the plaintiff, bears the burden to provide substantial evidence for this claim. Wheat must illustrate that “but for” exercising her Title VII and FMLA protected rights, she would not have been discharged. Wheat effectively acknowledges the conduct with which she was charged, but contends that the actual cause of her termination was that she asserted her protected rights. She points to other specific instances in which she, and other employees as well, were physically excessive toward juveniles but not discharged.
In this connection, the record shows that Wheat herself was previously improperly excessive in dealing with a juvenile in 2005. At that time she had never asserted Title VII or FMLA rights. Responding to this 2005 incident, the FPJDC’s Operations Manager “recommended three days suspension without pay and six months [of] probation.” Affidavit of Steven Happel, at 4, ¶ 34. The Executive Director, however, “[r]ecognizing Ms. Wheat’s ‘exemplary job performance’ ... reduced the disciplinary action to a written reprimand” and required Wheat to “undergo additional training.” Id. at ¶ 35. But with respect to the 2012 incident, after asserting her Title VII and FMLA rights, the Commission terminated Wheat’s employment because, it said, “No JDS officer had ever physically attacked a youth resident before Ms. Wheat did, and, no JDS officer was allowed to remain in the Commission’s employ after any such attack.” Defendant’s Amended Statement of Uncontested Fact, Doc. 39, ¶ 72. Wheat rebutted this assertion by offering evidence of other employees who were violent towards juvenile residents, but were not discharged by the Commission. See Plaintiffs Statement of Uncontested Fact, Doc. 40-1, ¶ 72. It was only after Wheat brought these allegations of the Commission’s disparate treatment of its employees to the attention of the district court, that the Commission modified its reasons for termination. In its revised explanation for her discharge, the Commission asserted that Wheat’s second “violent attack on a youth resident ... gave the Commission compelling grounds to fire her to protect the health and safety of the youth residents.” Defendant’s Second Reply Memo, Doc. 46, at 9. After providing *711 its revised explanation, the Commission did not make any reference, corrective or otherwise, to its original non-retaliatory explanation for discharging Wheat (“[n]o JDS officer [ ] ever physically attacked a youth ... [or was] allowed to remain in the Commission’s employ after any such attack”).[3] In other words, the grounds for Wheat’s discharge related solely to the incidents of January 3, 2012, immediately preceding her discharge. In this light, the Commission offers no evidence or argument to distinguish this different treatment of Wheat before and after exercising her protected rights.[4] Therefore, the Commission’s inconsistent treatment of Wheat raises disputed issues of material fact as to whether: but for exercising her rights she would have been discharged.
There is more, however. There is evidence that the Commission has been inconsistent in its discharge of other employees who mistreated juveniles. Edwin Marshall, a “Night Supervisor,” stated in his declaration that he was discharged after “chemically restraining]” a juvenile who “refuse[d] to obey orders and continued to threaten staff with bodily harm.” Marshall Declaration, at 2. But, when a different “supervisor restrained a ... juvenile and gave the juvenile several knee strikes while the juvenile was in handcuffs,” the Commission did not discharge him. Id. at 2-3.
Thus, in sum, the record before us indicates that the Commission has discharged some employees for excessive force, but not others. This mixed record constitutes substantial evidence of a genuine issue of material fact as to whether Wheat’s discharge would have occurred “but for” exercising her protected rights. Thus, the district court erred in granting summary judgment for the Commission.
IV.
For these reasons, the district court’s grant of summary judgment to the Commission with regard to Wheat’s retaliatory termination claim is VACATED and the case is REMANDED for further consideration not inconsistent with this opinion. The judgment is AFFIRMED in all other respects.[5]
VACATED and REMANDED in part; AFFIRMED in part.

. Before the Supreme Court’s decision in Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), this Court held that only “ ‘ultimate employment decisions,’ such as hiring, granting leave, discharging, promoting, and compensating, satisfy the ‘adverse employment action’ element of a prima facie case of retaliation.” E.g., Hunt, 277 F.3d at 769 (emphasis omitted).

. Wheat raises other issues on appeal including: being transferred to work with females; being bitten by a female resident; being denied medical information about the resident who bit her; being “denied support by [her] supervisors in difficult situations with” residents; being sexually harassed by a female resident; being "denied support of on the scene staff in physical confrontations with” residents; and being denied a timely performance evaluation. After thorough review, it is clear that Wheat provides no record support for any of these pre-termination "materially adverse action” allegations in connection with her asserted Title VII and FMLA rights.

. On appeal, for the first time, the Commission "agree[d] that to the extent Ms. Wheat’s prior use of excessive force shows that her conduct was not unprecedented, the Commission stood corrected.” Appellee Brief, at 34.

. Although the Commission has consistently described the 2005 incident in its briefing before the district court, and this Court, it has never attempted to address or explain why it treated Wheat differently in 2005, than it did in 2012.

. Wheat also alleged a sexual harassment claim under Title VII because a twelve-year-old, female resident under her supervision made sexual advances toward her. After reviewing the record, we find that this claim of inmate on employee harassment has no merit under Title VII against the employer. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir.2013) ("Relevant [Title VII harassment] factors are ‘the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.’ ”) (citations omitted); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (rejecting a sexual-harassment claim in part because "[t]he ordinary terms and conditions of [the plaintiff’s] job required her to review the sexually explicit statement” that formed the basis of the harassment complaint).