# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-40619

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2016

Lyle W. Cayce
Clerk

GARY COFFMAN; PATRICIA COFFMAN,

Plaintiffs - Appellants

v.

ALVIN COMMUNITY COLLEGE,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:11-CV-361

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

PER CURIAM:*

The Coffmans are a married couple who work on the faculty of Alvin Community College. During a period of declining enrollment and restricted finances, the College reduced the workload and course offerings of both Dr. and Mrs. Coffman. They sued claiming the changes in their working conditions were the result of unlawful age discrimination and retaliation. The magistrate judge granted summary judgment for the College on all of the Coffmans'

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40619

claims. Because the Coffmans failed to show a municipal policy or policymaker was responsible for the decisions they protest, we AFFIRM the grant of summary judgment for the College on the Coffmans' § 1983 retaliation claims. Because Mrs. Coffman failed to introduce evidence of pretext by offering sufficient comparators and failed to offer evidence of a retaliatory adverse employment action, we AFFIRM the grant of summary judgment for the College on her Age Discrimination in Employment Act retaliation and age discrimination claims.

## I.

Dr. Coffman, 65 years old, is a full-time instructor at Alvin Community College ("the College") while Mrs. Coffman, 66 years old, is a part-time instructor. The events that led to this lawsuit began in 2009 when the Sports and Human Performance Department ("the Department"), facing a thirty percent decline in enrollment, began to reduce teaching loads in order to lower costs without cutting staff. The Department attempted to provide full-time instructors their required minimum course load by having them take on some responsibilities in other departments.

As part of this reassignment process, College administrators proposed having Dr. Coffman teach some courses in the English Department that fall. Dr. Coffman complained that he was not qualified for the suggested positions and was offered an opportunity in the reading lab instead. Once again, Dr. Coffman insisted that the position was outside his area of expertise and wrote to the head of the Department, the College Provost, and the College President to insist that he be allowed to remain in the Department and suggesting that other faculty lose courses in the Department instead. He wrote again to the College President and Provost and received a response from the President informing Dr. Coffman that he would be allowed to remain exclusively in the Department in the fall of 2009.

2

No. 15-40619

The College tried to meet Dr. Coffman's demands to teach only in the Department and to teach only particular courses within the Department. Because other full-time faculty needed their remaining courses in the Department to retain full-time status, the College could only give Dr. Coffman courses assigned to part-time instructors. The only courses taught by part-time instructors in the fall of 2009 that Dr. Coffman expressed an interest in teaching were taught by Mrs. Coffman. The College re-assigned two classes that had been assigned to Mrs. Coffman to Dr. Coffman. Dr. Coffman was again unhappy with the assignments and asked to exchange courses with his wife. The Department complied with his request. In the final schedule, Dr. Coffman was set to teach five courses and Mrs. Coffman was set to teach two. One of Mrs. Coffman's classes was cancelled because it failed to meet the enrollment requirement.

After the cancellation, which left Mrs. Coffman teaching only a single course, she filed an administrative grievance through the College's internal process and simultaneously filed a charge of discrimination with the Equal Employment Opportunity Commission alleging age discrimination and retaliation. Mrs. Coffman alleged that other younger part-time instructors were not losing classes and that the Department's decision to reassign her classes to a man (Dr. Coffman) evidenced gender discrimination. Mrs. Coffman based her inference of discrimination solely on the College's actions, not on any particular statements.[1] The College abated the internal grievance process during the EEOC's consideration of her accusations.

---

[1] During her deposition, opposition counsel asked why Mrs. Coffman believed her age motivated the College's decision and she responded:

> Well, they would give – they wouldn't give them [the courses she was not asked to teach] to me. … I felt picked on because of taking away my classes and making my husband teach them. The whole thing was trying to get my husband to quit. They went after my husband trying to make him quit and

No. 15-40619

One year later, in September 2010, Dr. Coffman filed a grievance with the College. He argued that the College was limiting enrollment in his classes by conducting maintenance in the gymnasium and that other faculty in the Department would be teaching overload courses while he was not offered any overload courses. The College responded that the maintenance related to safety concerns and that the overload class was permitted in the fall because that instructor's non-overload class was over-subscribed, requiring an additional section. Dr. Coffman sought to appeal his grievance but withdrew his appeal. During the following summer, Dr. Coffman taught two courses. College policy dictates that an instructor only be paid for a single course during a summer semester unless more than 15 students enrolled in each of the courses. Dr. Coffman's courses had only 16 students combined.

The Coffmans filed a complaint in federal court alleging retaliation, age and gender discrimination[2] against Mrs. Coffman, and due process and first amendment retaliation against Dr. Coffman. After discovery, the College moved for summary judgment and the court[3] granted summary judgment in favor of the College on all the Coffmans' claims.

## II.

We review a grant of summary judgment *de novo. Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is

---

they were doing everything they could think of to punish him. … Everything that happened to me was because I was married to him. Because when he wouldn't teach the stupid English classes, they were like 'Well we're going to get his wife and that's the way we're going to punish him.' They went after me because of him.

[2] Mrs. Coffman later voluntarily dismissed her gender discrimination claim. It is not part of this appeal.

[3] The parties consented to adjudication of the summary judgment motion by the magistrate judge.

4

entitled to judgment as a matter of law. F.R.C.P. 56(a). The court may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed*, 701 F.3d at 438 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010)).

## A.

We begin by examining Dr. Coffman's claims. All of Dr. Coffman's claims are constitutional claims that arise under § 1983. *See* 42 U.S.C. § 1983. The Coffmans sued the College, which as an instrument of the state of Texas, Tex. Educ. Code § 130.0011, enjoys sovereign immunity. The Fourteenth Amendment permits Congress to abrogate that immunity in certain cases, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59 (1996), but under § 1983, that immunity is only abrogated when the injury to the plaintiff is attributed to "action pursuant to official municipal policy," *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Dr. Coffman must show "proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).

Dr. Coffman does not argue that the College President or others involved qualify as policymakers.[4] Similarly, he does not point to any policy established by the College's Board (which state law establishes as the policymaker for the College, Tex. Educ. Code § 130.082) delegating authority to the President or Department head nor does he identify any College policy pursuant to which the Department deprived him of his constitutional rights. If anything, Dr. Coffman's assertions are that the College impermissibly deviated from official

---

[4] The requirement for a policy maker "is not an opaque requirement." *Piotrowski*, 237 F.3d at 578. This court has emphasized that "actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc).

No. 15-40619

policy by disregarding rules regarding reduction of faculty. The magistrate judge concluded that Dr. Coffman failed to "identify what ACC policy, promulgated by its Board of Trustees, was the moving force behind the violation of their constitutional rights." *Coffman v. Alvin Community College*, G:11-cv-361, 2015 WL 1548953 at *3 n.8 (S.D. Tex. Apr. 7, 2015). Dr. Coffman offers nothing on appeal to disturb that conclusion. As a result, Dr. Coffman's § 1983 claims alleging First and Fourteenth Amendment retaliation fail as a matter of law.

## B.

Mrs. Coffman asserts two claims grounded in the Age Discrimination in Employment Act.[5] 29 U.S.C. § 621–34. First, she argues that she was discriminated against on the basis of her age when her course load was reduced. 29 U.S.C. § 623(a)(2). Second, she argues that the reduction in course load and the College's decision to abate her internal grievance violate the ADEA's provision prohibiting retaliation. 29 U.S.C. § 623(d).

## 1.

A plaintiff asserting an age discrimination claim must show that age was the but-for cause of the adverse employment action taken against her. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). When, as here, a plaintiff relies on circumstantial evidence to show age discrimination, her claims are weighed under the burden shifting scheme established in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792 (1973); *Moss v. BMC Software*

---

[5] The magistrate judge concluded that "Mrs. Coffman, who is an at-will employee, fails to substantiate her allegations by pointing to any state law or contract that supports that she has a protected property interest protected by the Due Process Clause." Mrs. Coffman states that "no such due process claim was asserted on Patricia Coffman's part below." By so stating, and by failing to brief a constitutional claim, Mrs. Coffman waived whatever claim she may have had. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 483 n.5 (5th Cir. 2003) ("Issues not briefed on appeal are waived."); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 ("[W]aiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.").

No. 15-40619

*Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). First, the plaintiff "must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purposed explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922. "A plaintiff may show pretext 'either through direct evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Id.* (quoting *Jackson*, 602 F.3d at 379).

Mrs. Coffman established her prima facie case by showing that she is over forty, she was previously regularly called upon to teach as many as four or five courses in a semester and, since 2009, her work load has been severely reduced. The College meets its burden to offer a non-discriminatory reason for the reduction in her workload by pointing to the decline in enrollment and financial hardships facing the Department. Mrs. Coffman attempts to prove that the College's explanation is pre-textual by drawing comparisons between her situation and those of two other part-time instructors who did not experience as much of a reduction in course load as Mrs. Coffman. Her comparison fails to show disparate treatment because her comparators are not similarly situated. Although both, like Mrs. Coffman, are part-time instructors in the Department, both taught activity courses while Mrs. Coffman, by her own admission, taught only lecture courses. They, unlike Mrs. Coffman, both had certifications relating to the courses they continued to teach when Mrs. Coffman's course load was reduced. *See McElroy v. PHM Corp.*, 622 F. App'x 388, 391 (5th Cir. 2015) ("[E]mployees are not nearly identical when their positions require different levels of skill and responsibility—even where they

7

perform the same job duties."). Finally, the courses that Mrs. Coffman no longer taught were reassigned not to other part-time faculty but to a full-time faculty member (Dr. Coffman) who indicated that he would not teach the courses taught by Mrs. Coffman's comparators. Without direct evidence of discrimination and without adequate comparators, Mrs. Coffman bases her allegations solely on her own subjective perception of discrimination. "This type of evidence is insufficient to create a fact issue as to pretext." *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1451 (5th Cir. 1992).

**2.**

Mrs. Coffman's remaining claim alleges that the College's decision to abate her grievance during the pendency of her EEOC complaint constituted retaliation in violation of Title VII and the AEDA. The EEOC agreed with Mrs. Coffman's contentions, concluding that (1) the College's abatement effectively denied her access to the grievance process; (2) deprivation of access to the grievance process constituted an adverse employment action; and (3) the abatement was made in retaliation for Mrs. Coffman's EEOC filing. The EEOC dismissed the College's argument that the abatement avoided duplicative proceedings and suggested conciliation while also providing Mrs. Coffman a right to sue letter.

In order to establish a retaliation claim, a plaintiff must show that: "(1) she participated in an activity protected by Title VII; and (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000). To establish causation, an employee must show that but for the protected activity, the adverse

employment action would not have occurred. *Seaman v. CSPH Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

The College does not dispute that filing a complaint with the EEOC is a protected activity under Title VII and Mrs. Coffman has likely introduced sufficient evidence to create a triable issue of fact regarding whether her EEOC complaint caused the abatement of her internal grievance. To survive summary judgment, Mrs. Coffman must also show that the abatement of her internal grievance pending the EEOC's determination was an adverse employment action.

In order to establish an adverse employment action, the Supreme Court requires that: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In cases decided before *Burlington Northern*, this court has held that although an employee demonstrated her employer "failed to resolve her internal grievance," among other slights, "she did not allege an ultimate employment decision" that could constitute an adverse employment action. *Messer v. Meno*, 130 F.3d 130, 140 (1997); *accord Gregory v. Tex. Youth Com'n*, 111 Fed. App'x 719, 721 (5th Cir. 2004) (held that employer's actions "denying [the plaintiff] proper access to the internal grievance process [was] not [an] ultimate employment decision[]."). The Fifth Circuit has not directly addressed the issue after *Burlington Northern*, although district courts in the circuit have continued to find that denial of access to an internal grievance process does not constitute an adverse employment action. *Vasquez v. Nueces County*, No. C-11-45, 2012 WL 401056, at *5 (S.D. Tex. Feb. 6, 2012) (citing *Gregory*); *Lynch v. Baylor University Medical Center*, No. 3:05-cv-0931, 2006 WL 2456493, at *7–*9 (N.D. Tex. Aug. 23, 2006).

Assuming, *arguendo*, that *Burlington Northern* altered the standard for determining whether an adverse employment action occurred,[6] the abatement of an internal grievance does not satisfy *Burlington Northern*'s test any more than it satisfied the prior test for an adverse employment action. In *Burlington Northern*, the Supreme Court held that an employee suffered an adverse action when he was suspended without pay for more than a month and, on his return, was reassigned to a "more arduous and dirtier" position that was less prestigious than his prior position. 548 U.S. at 58. In other cases using the *Burlington Northern* standard, this court has held against claimants alleging adverse employment actions occurred based on: assignment of janitorial duties on rehiring, *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 707 (2016), verbally harassing behavior from coworkers, *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479–80 (5th Cir. 2008), denial of leave of absence and statements from supervisors to coworkers that the employee "was creating problems," *Holloway v. Dept. of Veterans Affairs*, 309 F. App'x 816, 817 (5th Cir. 2009).

Mrs. Coffman did not suffer any permanent or serious alteration in her employment because of the abatement. *See Burlington N.*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). The reduction in her

---

[6] Before *Burlington Northern*, courts in the Fifth circuit seem to have used a materiality standard, asking whether the action "effect[ed] a material change in the terms of employment." *Dupre v. Harris County Hosp. Dist.*, 8 F. Supp. 2d 908, 924 (S.D. Tex. 1998). *Burlington Northern* adopted a two-prong test, asking for both materiality and a reasonable objective expectation that the material change would deter an employee from filing a claim. *Burlington Northern*, 548 U.S. at 68. After *Burlington Northern*, this court has continued to reference pre-*Burlington* decisions when deciding whether an adverse employment action occurred. *See Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (analyzing whether an adverse employment action occurred with reference to *Burlington Northern*; *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004); *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 770 (5th Cir. 2001); *Forsyth v. City of Dall.*, 91 F.3d 769, 774 (5th Cir. 1996)).

course load and the associated decline in pay occurred before her filing with the EEOC—they were, in fact, the basis of her EEOC complaint. The only action the College took against Mrs. Coffman *after* her complaint was to abate the internal grievance she filed in parallel with her EEOC complaint. The abatement did not diminish Mrs. Coffman's position at the College; at worst it may have delayed Mrs. Coffman's chances of improving her situation by convincing the administration to reassign courses to her. It seems unlikely she could have obtained that outcome, even without abatement of the grievance, because the Department suffered the same enrollment difficulties in 2010 and 2011 that first caused the reduction and Mrs. Coffman's qualifications remained the same in comparison with other teachers throughout the process. The College's decision to abate its internal grievance pending the EEOC complaint is a transient harm that does not rise to the level of materiality required by *Burlington Northern*. *See* 548 U.S. at 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."). The abatement is not an outcome that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Rochon v. Gonzales*, 483 F.3d 1211, 1219 (D.C. Cir. 2006).

Because the abatement of her grievance does not qualify as an adverse employment action, Mrs. Coffman has not introduced facts creating a dispute about whether the College took illegal retaliatory actions that harmed her.

## III.

Because the Coffmans have failed to create a genuine issue of fact: (1) that a policy or policymaker was responsible for the actions against Dr. Coffman; (2) that the College's reasons for the reduction in Mrs. Coffman's course load were pretextual; and (3) that Mrs. Coffman suffered an adverse employment action after filing her EEOC complaint, we AFFIRM the grant of summary judgment in favor of the College.

11