# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30163
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2015

Lyle W. Cayce
Clerk

BRENDA L. MCELROY,

  Plaintiff –Appellant,

versus

PHM CORPORATION, Doing Business as Oak Nursing Home,

  Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:13-CV-1348

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

Brenda McElroy appeals a summary judgment on her claims against PHM Corporation ("PHM") for employment discrimination under Title VII and willful violation of the Family and Medical Leave Act of 1993 ("FMLA"). Reviewing the issues *de novo*, we agree with the district court that McElroy

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30163

failed to make out a *prima facie* case, so we affirm.

## I.

PHM manages two long-term care facilities. In March 2007, McElroy, who is black, was hired as a van driver at one such facility, The Oaks. Several months later, she was promoted to a new position as Activities Director[1] with pay increased from $6.50 to $7.00 per hour. There, her responsibilities included planning and supervising activities in the facility's new unit for residents with Alzheimer's disease and dementia, which had about twenty beds. Over the course of her employment, McElroy received several raises; she made $8.75 per hour at the time she resigned.

McElroy also assisted fellow Activities Director Regina White, who is white, with other residents. White had worked as Activities Director at The Oaks since November 2005 and was the only person in the department before McElroy was hired. Her duties included planning and managing activities for all the facility's approximately one hundred residents, and she started her position at $7.50 per hour. At the time McElroy was hired, White earned $10.00 per hour. Both McElroy and White reported to Megan Terrell as Administrator for The Oaks, and Terrell, in turn, reported to PHM's Director of Operations, Dena LaBorde.

Beginning in late 2010, McElroy began to suffer from severe bleeding and cramping related to her menstrual cycle. She took paid time off for two days in February 2011 to seek treatment. Around noon on March 1, however, she began experiencing severe symptoms while at work, and she spoke with

---

[1] The parties dispute whether McElroy's new position was titled Activities Director or Assistant Activities Director, and there is evidence for both. The summary-judgment standard requires us to assume that McElroy's title was the higher one, Activities Director, though this does not control the outcome. *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

2

No. 15-30163

LaBorde and Terrell and asked Terrell whether she could leave work early to seek treatment.  Terrell asked her to stay until 3 p.m., and according to McElroy, Terrell stated that she would not have a job if she left before then. But when McElroy returned to work in the afternoon, the symptoms worsened, and she could not reach Terrell to request permission to leave again.  Instead, at about 1:40, she went to Human Resources, wrote a brief resignation letter, and left to see her doctor.

A few months later, McElroy filed a charge with the Equal Employment Opportunity Commission, claiming that PHM had discriminated against her based on race.  She received a notice of right to sue and lodged claims for violations of Title VII and the FMLA.  The district court dismissed the claims on summary judgment, and McElroy appeals.

II.

When an employment-discrimination claim is based on circumstantial evidence, we apply the familiar burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  To establish a *prima facie* case, a plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

McElroy avers two ways in which PHM discriminated against her based on race.  First, she contends that Terrell's denying her permission to leave work early on March 1 was an adverse employment action taken on account of race. Second, she maintains that she was paid less than white employees.  The

No. 15-30163

district court dismissed both claims because McElroy failed to make out certain elements of a *prima facie* case,[2] and we examine each in turn.

A.

McElroy asserts that Terrell constructively discharged her because of race when, on March 1, she denied McElroy permission to leave right away and instead instructed her to stay until 3 p.m. or face termination. In the alternative, McElroy claims that Terrell's instruction was a denial of leave. The district court dismissed the claim because neither action constitutes an adverse employment action.

Adverse employment actions include only "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (internal quotation marks omitted). McElroy's first theory of adverse action fails because Terrell's verbal threat to fire McElroy if she left before 3 p.m., though perhaps ill advised, does not constitute a constructive discharge. Mere verbal threats to fire an employee alone do not make working conditions so intolerable that a reasonable employee would feel forced into involuntary resignation.[3]

Second, Terrell's denial of permission to leave work right away on a single day does not constitute a denial of a leave request that would qualify as an adverse employment action. Our court and others have distinguished between (1) decisions denying an employee's right to take leave or the amount of leave

---

[2] No party disputes that McElroy meets the first two elements of a *prima facie* case: she is a member of a protected group and was qualified for her position.

[3] *See, e.g., Breaux v. City of Garland*, 205 F.3d 150, 159–60 (5th Cir. 2000); *Chandler v. La Quinta Inns, Inc.*, 264 F. App'x 422, 425 (5th Cir. 2008) (per curiam); *Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013) (per curiam).

available and (2) decisions affecting the specific date, time, and manner that leave is taken. Thus, in the context of a retaliation suit,[4] the general denial of paid leave, or the denial of an extension of unpaid leave, constitutes an adverse employment action. *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521–23 (5th Cir. 2001). On the other hand, "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time." *Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (per curiam).[5] A manager's denial of a request to leave work immediately is similarly not an ultimate employment decision. As a result, McElroy has failed to meet the third element of a *prima facie* case for discrimination based on her resignation.[6]

### B.

Regarding McElroy's disparate-pay claim, "To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). To satisfy the comparator element, the plaintiff "must show that his circumstances are nearly identical to those of a better-paid employee who is not a member of the protected class." *Id.* at 523 (internal quotation marks omitted). The disputed issue on this

---

[4] Granted, the standards for an adverse employment action under Title VII are different depending on whether the claim is for discrimination or for retaliation. *Compare McCoy*, 492 F.3d at 560, *with Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). But because the standard is lower in a retaliation suit, employer actions that fail to meet that standard apply *a fortiori* to discrimination claims.

[5] *See also Lara v. Kempthorne*, 673 F. Supp. 2d 504, 518–19 (S.D. Tex. 2009); *Johnson v. Watkins*, 803 F. Supp. 2d 561, 575 (S.D. Miss. 2011); *Beltran v. Univ. of Tex. Hous. Health Sci. Ctr.*, 837 F. Supp. 2d 635, 643 (S.D. Tex. 2011) (citing cases).

[6] Alternatively, the district court correctly concluded that McElroy also failed to show that other similarly situated employees outside the protected class received more favorable treatment.

claim—and the issue on which the district court based its decision—is whether McElroy has presented an appropriate comparator for her *prima facie* case.

McElroy first points to White as a comparator who was paid more. Though McElroy and White share a number of similarities in their employment at The Oaks, we agree with the district court that relevant differences distinguish White's job and pay level, such that her circumstances were not "nearly identical" to McElroy's. The summary-judgment evidence indicates that Terrell based hiring and pay levels at The Oaks on various factors, including the amount of responsibilities, relevant certifications, and previous experience. McElroy and White did share the same job title and supervisor, and they engaged in similar types of work with the residents.

Yet it is undisputed that White was hired over eighteen months before McElroy to act as the sole Activities Director. Thus, White's responsibilities to manage activities for the entire facility upon her initial hire were greater than McElroy's, who joined in a new position as a second director, and White had accrued more experience in the position. White's wage had reached its maximum of $10.00 while she was sole director in July 2006, about one year before McElroy was hired. Finally, though both performed similar duties while working together, the summary-judgment evidence shows that White had greater responsibilities. McElroy acknowledges that her role centered on activities for the dementia unit, where there were only about twenty residents. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir. 2009). We recently ruled, in similar cases, that employees are not nearly identical when their positions require different levels of skill and responsibility—even where they intermittently perform the same job duties. *See Fields v. Stephen F. Austin State Univ.*, No. 15-40011, 2015 WL 4273272, *1–2 (5th Cir. July 15, 2015) (per curiam) (unpublished). Similarly, in *Jackson v. Honeywell International, Inc.*,

No. 15-30163

601 F. App'x 280, 285 (5th Cir. 2015), we wrote that a plaintiff's coworkers were not qualified comparators because, among other reasons, they had been hired at different times and had different positions.[7]

So too here.  Salient differences between McElroy and White make a pay comparison inapt, so White is not an appropriate comparator for McElroy's disparate-pay claim.

McElroy also claims that she was replaced by a white woman, Sherry Holmes, who was paid more, and the district court failed to consider that new employee as a comparator.  But though the evidence does show that a new employee was hired in the activities department nine months after McElroy resigned, no summary-judgment evidence demonstrates that Holmes was hired for McElroy's old position.  The only evidence about Holmes, other than her higher wage of $12.00, is LaBorde's declaration explaining that Holmes was hired for an entirely separate position as Environmental Supervisor.  Without any evidence to contradict that, Holmes also cannot qualify as a comparator for McElroy's disparate-pay claim.  Consequently, McElroy has failed to establish an essential element of her *prima facie* case for disparate pay.  *See Lee*, 574 F.3d at 259–60; *Ramirez v. Gonzales*, 225 F. App'x 203, 207–08 (5th Cir. 2007) (per curiam).

### III.

McElroy maintains that PHM willfully violated the FMLA, 29 U.S.C. §§ 2612(a), 2615.  But this claim too fails because there is an insufficient *prima facie* case.[8]  First, there is no evidence that McElroy ever requested FMLA

---

[7] *See also Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 880 (M.D. La. 2014) (citing different hire dates among the reasons making a comparator inappropriate).

[8] *See Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (setting out

No. 15-30163

leave; her previous absences were deducted from paid time off that she had earned, and her request to leave work early on March 1 does not legally qualify as a request for FMLA leave. *See Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998). Thus, any action PHM allegedly took was not in response to an activity protected by the FMLA. Moreover, as discussed earlier, McElroy cannot show that she suffered an adverse employment action. PHM did not constructively discharge her by denying her permission to leave work early, and that action was not a denial of leave otherwise.

AFFIRMED.

---

the elements for a *prima facie* case for discrimination or retaliation under the FMLA).