Opinion issued October 31, 2023



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00676-CV**

———————————

**CITY OF PASADENA, Appellant**

**V.**

**JANET POULOS, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-09772**

---

**MEMORANDUM OPINION**

Janet Poulos sued her employer, the City of Pasadena, and asserted claims

under the Texas Commission on Human Rights Act ("TCHRA") for hostile work

environment based on race, retaliation, and racial discrimination. The City moved to

dismiss Poulos's claims under Rule of Civil Procedure 91a, arguing that the claims lacked a basis in law because the City's governmental immunity had not been waived. The trial court denied the City's motion to dismiss.

In two issues, the City argues that the trial court erred by denying its Rule 91a motion to dismiss because (1) Poulos did not timely file suit under the TCHRA, and (2) the only timely claims that Poulos asserted in her charge of discrimination are not actionable under the TCHRA. We affirm in part and reverse and render judgment in part.

**Background**

Janet Poulos is Mexican American and has been employed by the City of Pasadena as a Customer Service Assistant in a call center since 2002. Beginning in 2015, she allegedly "observed bias and favorable treatment of white employees when she got assigned a new supervisor" and "this discrimination has continued throughout her employment." Poulos alleged that her supervisor allowed the two white employees in the department "more leniency and privileges" than the three Mexican American employees. Poulos was allegedly subjected to "closer scrutiny than the treatment received by her white co-workers," such as being asked by her supervisor whether she was "logged in" to the call system, while one of her white co-workers was not logged in and was not questioned in this manner. Poulos's supervisor also allegedly yelled at her about time keeping and documentation.

2

In October 2019, Poulos made a complaint to Human Resources about her supervisor's harassment "and the unequal treatment she was experiencing." However, no action was taken, and "her director . . . dismiss[ed] her concerns and threaten[ed] to issue her a formal write up for voicing the inequality she was facing." Poulos alleged that one of her white co-workers was not disciplined for "fail[ing] to log into the system and assist with the incoming calls" or for sleeping in the office during work hours. Instead, this co-worker was promoted to a supervisory position.

Poulos also alleged that her supervisors subjected her to more stringent requirements concerning leaving work for medical appointments and taking restroom breaks during work hours. For example, in March 2021, the assistant supervisor of the department allegedly instructed Poulos to cancel a cardiologist appointment that she had scheduled weeks in advance and about which she had informed her supervisors. The next day, one of her white co-workers asked to leave work early and this request was granted, even though the co-worker had not provided any advance notice. Poulos's supervisor also allegedly required Poulos to ask permission from the assistant supervisor every time she needed to use the restroom, but none of her white co-workers were subjected to this same requirement.

In June 2021, the assistant supervisor allegedly refused Poulos's request to go to a medical appointment prior to a scheduled surgery. The assistant supervisor allegedly "attempted to intimidate" Poulos by "interrogating her about the necessity

3

of her surgical procedure" and discussing Poulos's personal medical information in front of co-workers. Poulos returned from medical leave in late July 2021 and was placed on "light duty" due to medical restrictions. Less than two weeks later, Poulos's supervisor instructed her to lift "water bottle crates and refill the refrigerator." When Poulos responded that she could not do so due to her medical restrictions, her supervisor "rudely dismissed" her concerns, "berated her publicly," and accused Poulos of being able to lift the water bottles because she carried a purse.

Poulos filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission–Civil Rights Division ("the Commission") on October 13, 2021. Poulos alleged that she has "continued to face additional harassment from her supervisors" following her filing of the charge. She has allegedly been assigned additional work without compensation, has "continue[d] to be closely monitored with her bathroom breaks," and has been "harassed for any breaks or requests for time off." Poulos alleged that she received a right to sue letter from the EEOC on November 18, 2021. She also alleged that she has "requested [that] the Texas Workforce Commission Civil Rights Division issue Complainant's 'Right to File Civil Action.'"

Poulos filed suit against the City on February 16, 2022, and asserted three claims under the TCHRA. Poulos asserted a claim for hostile work environment based on her race, alleging that her supervisors would monitor and interrogate her

4

more than her white co-workers, she was "held to a different standard for her attendance and break times" compared to her white co-workers, and she was "verbally assaulted by her supervisor and endured hostility and yelling on a frequent basis," while her white co-workers were not treated in the same manner.

Poulos also asserted a claim for retaliation. She alleged that she first complained about the discriminatory treatment in October 2019, but "her director" dismissed her concerns and threatened to give her a formal write-up. Poulos alleged that she suffered adverse employment actions including additional harassment from her supervisor; the denial of requested leave days for medical procedures; the ignoring of her medical restrictions and accommodations following a surgical procedure; and increasing hostility from her supervisor. She further alleged that following her EEOC charge, she had been assigned additional work without compensation, her bathroom breaks were closely monitored, and she was harassed concerning breaks and requests for time off.

Finally, Poulos asserted a claim for racial discrimination. She alleged that she was "scrutinized to a higher level than her white coworkers and berated and humiliated before her peers by her supervisor"; was "denied requests for leave days requested weeks in advance, while her white coworkers were allowed to leave early without prior notice"; and was "held to a higher standard than her white coworkers, including higher scrutiny for her time and work performance." She further alleged

5

that she was denied a promotion in favor of a white co-worker with less experience and qualifications. Additionally, she alleged that a white co-worker was not disciplined when that co-worker complained about a supervisor, but Poulos was threatened with a write-up for voicing concerns. Poulos sought actual and compensatory damages, "including lost wages and benefits in the past and future," mental anguish damages, and damages for pain and suffering.

Poulos requested issuance of service of citation. She served the City with citation on March 29, 2022.

The City answered and asserted the affirmative defense of governmental immunity, alleging that Poulos had not demonstrated that the City's immunity had been waived.

On May 17, 2022, the City moved to dismiss Poulos's suit for lack of subject-matter jurisdiction under Rule of Civil Procedure 91a. The City acknowledged that the TCHRA provides a limited waiver of governmental immunity, but it argued that the waiver only applies when the plaintiff alleges a violation within the scope of the statue and follows the TCHRA's mandatory procedures. The City first argued that Poulos's suit was untimely because she did not file her petition and serve the City with process within 60 days of receiving a right to sue letter. Although Poulos alleged that she received her right to sue letter from the EEOC on November 18,

6

2021, she did not file suit until February 16, 2022, and she did not serve the City until March 29, 2022.

The City also argued that Poulos did not file her charge of discrimination within 180 days of the occurrence of an unlawful employment practice. Because Poulos filed her charge of discrimination on October 13, 2021, any claims involving acts more than 180 days before that date—or before April 16, 2021—were untimely and could not be the subject of Poulos's suit. According to the City, Poulos's only timely claims involved complaints regarding absences and bathroom breaks, and those claims were not actionable under the TCHRA.

Poulos responded that she had timely filed suit. She received her right to sue letter from the EEOC and filed suit on February 16, 2022, but at that time, she had not yet received her notice of right to file a civil action from the Commission. She received that letter on March 5, 2022, and served the City on March 29, 2022, within the 60-day time-period. Poulos attached a copy of the notice from the Commission. Poulos also argued that she had alleged claims that were actionable under the TCHRA and that occurred after April 16, 2021, including claims that her white co-workers "were given preference on breaks and access to bathroom privileges," she was denied leave to go to a medical appointment, and the medical restrictions following her surgery were ignored.

The trial court denied the City's motion to dismiss. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (allowing party to take interlocutory appeal from order granting or denying plea to jurisdiction filed by governmental unit); *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, (Tex. App.—Austin 2014, no pet.) (stating that because Rule 91a motion challenged subject-matter jurisdiction, section 51.014(a)(8) afforded governmental unit right to take interlocutory appeal from denial of motion).

**Governmental Immunity**

The City contends that the trial court erroneously denied its motion to dismiss because Poulos cannot demonstrate that the City's governmental immunity was waived. In its first issue, the City argues that Poulos did not timely file suit and did not timely serve the City. In its second issue, the City argues that to the extent Poulos asserted any timely claims in her charge of discrimination, these claims are not actionable under the TCHRA.

*A.*    ***Standard of Review***

Sovereign immunity protects the State of Texas against lawsuits for damages unless the State consents to be sued. *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022). Governmental immunity provides similar protection to subdivisions of the State, including cities. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

8

"Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit "thus presents a jurisdictional question of whether the State has expressly consented to suit." *Curry*, 658 S.W.3d at 284; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004) (stating that sovereign immunity from suit "defeats a trial court's subject matter jurisdiction"). A plaintiff has the burden to affirmatively demonstrate that the trial court has jurisdiction, which "encompasses the burden of establishing a waiver of sovereign immunity in suits against the government." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

Parties may challenge a trial court's subject-matter jurisdiction through several different procedural vehicles, including a plea to the jurisdiction or a motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). A party may also challenge subject-matter jurisdiction by filing a motion to dismiss pursuant to Rule of Civil Procedure 91a. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016) (per curiam); *City of Houston v. Houston Metro Sec.*, No. 01-22-00532-CV, 2023 WL 2602520, at *2 (Tex. App.—Houston [1st Dist.] Mar. 23, 2023, no pet.) (mem. op.).

Under Rule 91a, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. TEX. R. CIV. P. 91a.1. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from the allegations, do not entitle the claimant to the relief sought. *Id.* In ruling upon this motion, the trial court may not consider evidence, but instead must decide the motion based "solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX. R. CIV. P. 91a.6; *Sanchez*, 494 S.W.3d at 724; *see* TEX. R. CIV. P. 59 (permitting "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on" to be attached to and made part of pleadings).

We review the merits of a Rule 91a motion de novo because the availability of a remedy under the facts alleged is a question of law. *Sanchez*, 494 S.W.3d at 724. Whether a pleader has alleged facts affirmatively demonstrating the existence of subject-matter jurisdiction is also a question of law that we review de novo. *Id.* at 725; *Miranda*, 133 S.W.3d at 226. To determine whether dismissal under Rule 91a is required, we consider whether the pleadings, liberally construed, alleged sufficient facts to invoke a waiver of governmental immunity. *Sanchez*, 494 S.W.3d at 725.

## B.  Timeliness of City's Rule 91a Motion

Before addressing the City's appellate arguments, we first address an argument that Poulos raised in her appellee's brief and her sur-reply brief. Poulos

argues that the trial court properly denied the City's Rule 91a motion because the trial court did not timely rule on the motion. She contends that as a result of the untimely hearing and ruling, "action pursuant to this rule is no longer available as a matter of law."

Rule 91a.3 provides that a motion to dismiss must be:

(a) filed within 60 days after the first pleading containing the challenged cause of action is served on the movant;

(b) filed at least 21 days before the motion is heard; and

(c) granted or denied within 45 days after the motion is filed.

TEX. R. CIV. P. 91a.3. "The word 'must' is generally construed as mandatory, and, therefore, as creating a duty or obligation." *Walker v. Owens*, 492 S.W.3d 787, 790 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Courts have repeatedly noted that while Rule 91a.3 provides that a motion to dismiss "must be . . . granted or denied within 45 days after the motion is filed," the Rule does not provide any consequences or sanctions if the trial court does not comply. *See id.*; *MedFin Manager, LLC v. Stone*, 613 S.W.3d 624, 628 (Tex. App.—San Antonio 2020, no pet.); *Koenig v. Blaylock*, 497 S.W.3d 595, 598 (Tex. App.—Austin 2016, pet. denied). This Court has held that while the trial court's failure to comply with the 45-day deadline is error, "the court's non-compliance with the mandatory language of the rule will not result in reversal if the error is found to be harmless." *Walker*, 492 S.W.3d at 790–91; *see MedFin Manager*, 613 S.W.3d at 628 (concluding that failure to grant or

11

deny motion within 45 days is error, but Rule's deadline "is directory, not jurisdictional").

Here, Poulos filed suit against the City on February 16, 2022, and served the City with citation on March 29, 2022. The City timely filed its motion to dismiss on May 17, 2022. Under the timelines of Rule 91a, the motion "must" have been granted or denied within 45 days after the motion was filed, or by July 1, 2022. The trial court did not rule on the City's motion until September 7, 2022.

The trial court's failure to rule on the motion within the 45-day deadline was error. *See* TEX. R. CIV. P. 91a.3; *Walker*, 492 S.W.3d at 790. However, because this deadline is not jurisdictional, the trial court did not lose jurisdiction to decide the motion to dismiss. *See MedFin Manager*, 613 S.W.3d at 629; *Koenig*, 497 S.W.3d at 599 (noting that in absence of language outlining consequences for trial court's failure to act within 45-day deadline, "it is more reasonable to conclude that" time limit in rule "is not a hard deadline that prohibits the court from considering the substance of the motion to dismiss after the expiration of the 45-day time period but, rather, a provision included in the rule to promote the orderly and prompt dismissal of baseless causes of action").

Moreover, Poulos has not attempted to identify any way in which she was prejudiced by the trial court ruling on the motion after the 45-day deadline had expired. *See Walker*, 492 S.W.3d at 791 ("[H]e does not contend that the parties

engaged in any discovery or other furtherance of the litigation process after the deadline passed. The motion simply remained pending during that period."); *Koenig*, 497 S.W.3d at 599 (stating that court could not "imagine any such prejudice" to plaintiff for failure to rule by 45-day deadline, noting that plaintiff would have more time to respond to dismissal motion, more time to amend petition, and more time to consider whether to non-suit). We conclude that the trial court's failure to rule on the City's Rule 91a motion within the 45-day deadline did not preclude the trial court from doing so after the deadline. We therefore turn to the merits of the City's arguments on appeal.

## C.      *Whether Poulos Timely Filed Suit Under TCHRA*

The Texas Legislature enacted the TCHRA to address discrimination and retaliation in the workplace and to "coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504 (Tex. 2012). When analyzing a claim brought under the TCHRA, we look to state cases as well as to the analogous federal statutes and the case law interpreting those statutes. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The TCHRA waives a governmental unit's immunity, but only when the plaintiff states a claim for conduct that actually violates the statute. *Clark*, 544 S.W.3d at 770; *Mission Consol. Indep.*

*Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) ("[T]he Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder.").

Under the TCHRA, an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age, the employer:

> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LABOR CODE § 21.051. An employer also commits an unlawful employment practice if the employer retaliates or discriminates against a person who (1) opposes a discriminatory practice; (2) makes or files a charge of discrimination; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. *Id.* § 21.055.

A person who is aggrieved by an unlawful employment practice may file a complaint with the Commission that states that an unlawful employment practice has been committed and states the facts on which the complaint is based. *Id.* § 21.201(a), (c). This complaint must be filed not later than the 180th day after the

date the alleged unlawful employment practice occurred. *Id.* § 21.202(a). If the Commission dismisses a complaint or does not resolve the complaint before the 181st day after the date the complaint was filed, the Commission shall inform the complainant of the dismissal or the failure to resolve the complaint. *Id.* § 21.208.

A complainant who receives notice under section 21.208 that the Commission has not dismissed or resolved the complaint "is entitled to request from the commission a written notice of the complainant's right to file a civil action." *Id.* § 21.252(a). "Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent." *Id.* § 21.254. Failure to issue the notice of the complainant's right to file a civil action does not affect the complainant's right to bring a civil action against her employer. *Id.* § 21.252(d). In the Code Construction Act, the Texas Legislature has provided that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." TEX. GOV'T CODE § 311.034. Title VII contains similar requirements that a plaintiff file a timely charge of discrimination and receive a "notice of the right to sue" from the EEOC before filing suit in court. *See* 42 U.S.C. § 2000e-5(e)(1) (requiring charge of discrimination to be filed with EEOC within 180 days of alleged unlawful employment practice), (f)(1) (requiring EEOC to notify complainant if EEOC

15

dismisses charge or has not filed its own civil action within 180 days of complainant filing charge); *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021).

Several courts—including some of our sister intermediate appellate courts, federal district courts, and the Fifth Circuit—have held that the event that triggers section 21.254's 60-day time period for filing a suit that asserts claims under the TCHRA is the receipt of the notice of the right to file a civil action from the Commission, not the receipt of a "right to sue" letter from the EEOC. *See, e.g.*, *Vielma v. Eureka Co.*, 218 F.3d 458, 464–68 (5th Cir. 2000); *Hansen v. Aon Risk Servs. of Tex.*, 473 F. Supp. 2d 743, 748 (S.D. Tex. 2007) (following rationale of *Vielma*); *Ledesma v. Allstate Ins. Co.*, 68 S.W.3d 765, 770–72 (Tex. App.—Dallas 2001, no pet.) (same). In making this determination, the Dallas Court of Appeals in *Ledesma* focused on the language of Labor Code sections 21.252, 21.253, and 21.254, all of which refer to a "notice of the right to file a civil action" and do not refer to the EEOC, EEOC procedures, or a "right to sue" letter issued by the EEOC. *See* 68 S.W.3d at 770; *see also Vielma*, 218 F.3d at 464–65 (noting that both sections 21.252 and 21.254 use same term—"a notice of the right to file a civil action"—and stating that in absence of contrary indications, court will "interpret words or phrases that appear repeatedly in a statute to have the same meaning").

We agree with the Fifth Circuit's and the Dallas Court of Appeals' construction of section 21.254. Labor Code section 21.252(a) provides that a

complainant is "entitled to request from the commission a written notice of the complainant's right to file a civil action." TEX. LABOR CODE § 21.252(a). The Commission's "failure to issue the notice of a complainant's right to file a civil action" does not affect the complainant's right to bring a lawsuit against her employer. *Id.* § 21.252(d). The Labor Code then provides that "[w]ithin 60 days after the date a notice of the right to file a civil action is received," the complainant may file suit against her employer. *Id.* § 21.254. As the Dallas Court of Appeals pointed out, none of these statutory provisions refers to the EEOC or a right to sue letter issued by the EEOC. *See Ledesma*, 68 S.W.3d at 770. The plain language of section 21.254, therefore, refers to the notice of the right to file a civil action issued by the Commission, not the right to sue letter issued by the EEOC. *See Vielma*, 218 F.3d at 464 (disagreeing that "right to sue" letter issued by EEOC is interchangeable with "right to file a civil action" letter issued by Commission). Concluding otherwise would read language into section 21.254 that the Legislature did not include. *See Ledesma*, 68 S.W.3d at 770; *see Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017) ("[W]e take statutes as we find them and refrain from rewriting the Legislature's text.").

Here, Poulos filed suit against the City on February 16, 2022. In her original petition, Poulos alleged the following with respect to "Administrative Conditions Precedent" to filing suit:

17

10.     On October 13, 2021, Plaintiff timely and dually filed a Charge of Discrimination against the Defendant with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission, EEOC Charge No. 460-2022-00189. Plaintiff received a right to sue from the EEOC on November 18, 2021. Plaintiff files this complaint within 90 days of receiving the notice of right to sue. All conditions precedent to filing this lawsuit have been performed or have occurred.

11.     Plaintiff has requested [that] the Texas Workforce Commission Civil Rights Division issue Complainant's "Right to File Civil Action."

Poulos only asserted claims under the TCHRA; she did not allege any violations of Title VII. In response to the City's motion to dismiss, Poulos attached the "Notice of Complainant's Right to File Civil Action" issued by the Commission. Poulos received this notice on March 5, 2022, after she had filed suit against the City. It is undisputed that Poulos served the City on March 29, 2022.

The City argues that Poulos did not timely file suit under the TCHRA because she received the right to sue letter from the EEOC on November 18, 2021, but she did not file suit until February 16, 2022, more than 60 days after receipt of the right to sue letter. However, receipt of the EEOC right to sue letter does not trigger the 60-day time period to file suit under the TCHRA; instead, receipt of the notice of the right to file a civil action from the Commission triggers the running of the 60-day period. *See Ledesma*, 68 S.W.3d at 770–72; *Vielma*, 218 F.3d at 464–68. In her petition filed on February 16, 2022, Poulos alleged that she had requested that the Commission issue a notice of the right to file a civil action. Construing her pleadings

18

liberally, as we must when reviewing an order on a Rule 91a motion, we conclude that at the time Poulos filed suit, she had requested but not yet received a notice of the right to file a civil action from the Commission. *See Sanchez*, 494 S.W.3d at 725. Thus, the 60-day time period in section 21.254 had not yet begun running, and Poulos timely filed her TCHRA claims against the City. *See* TEX. LABOR CODE § 21.254; *Ledesma*, 68 S.W.3d at 767–68, 772 (noting that Ledesma received right to sue letter from EEOC on June 11, 1998, she filed suit and asserted claims under TCHRA on September 8, 1998, and she requested that predecessor agency to Commission issue notice of right to file civil action on same date she filed suit, and concluding that trial court erred by granting plea to jurisdiction because Ledesma was not required to file suit asserting TCHRA claims within 60 days of receiving EEOC letter).

The City also argues in its first issue that Poulos did not timely serve it with citation. "Texas courts have interpreted section 21.254 to mean that a plaintiff must file the suit and serve notice of the suit upon the proper parties within 60 days of receiving of notice of a right to sue from the [Commission]." *McCollum v. Tex. Dep't of Licensing & Regul.*, 321 S.W.3d 58, 63 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Tarrant Cnty. v. Vandigriff*, 71 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied) ("The mere filing of a lawsuit is not sufficient to meet the requirements of 'bringing suit' within the limitations period; rather, a plaintiff must

19

*both* file her action *and* have the defendant served with process."). The date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service. *Vandigriff*, 71 S.W.3d at 924.

Here, Poulos received her notice of the right to file a civil action from the Commission on March 5, 2022, the date that triggers section 21.254's 60-day time period for bringing suit. As stated above, it is undisputed that Poulos filed suit on February 16, 2022—before receiving the notice of the right to file a civil action— and served the City on March 29, 2022. Poulos therefore served the City with citation within the 60-day time period for bringing suit. *See* TEX. LABOR CODE § 21.254; *McCollum*, 321 S.W.3d at 63; *Vandigriff*, 71 S.W.3d at 924.

We overrule the City's first issue.

### D.    *Whether Poulos's Claims are Actionable Under the TCHRA*

As mentioned above, the TCHRA waives governmental immunity, "but only when the plaintiff states a claim for conduct that actually violates the statute." *Clark*, 544 S.W.3d at 770. To establish a trial court's jurisdiction over a TCHRA claim, the plaintiff must plead the elements of the statutory cause of action—the "basic facts that make up the prima facie case"—so the trial court can determine whether the plaintiff has sufficiently alleged a TCHRA violation. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015). The plaintiff must also "strictly satisf[y] the procedural requirements outlined in the TCHRA" to bring suit against a

20

governmental entity. *See Chatha*, 381 S.W.3d at 513–14. We therefore turn to whether Poulos pleaded facts that state a claim under the TCHRA.

### 1. Whether Poulos timely asserted alleged discriminatory acts in her charge of discrimination

The TCHRA requires a plaintiff to exhaust her administrative remedies by filing a complaint with the Commission or the EEOC. TEX. LABOR CODE § 21.201; *Chatha*, 381 S.W.3d at 503, 504 n.4; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010). The complaint must be filed "not later than the 180th day after the date the alleged unlawful employment practice occurred." TEX. LABOR CODE § 21.202(a); *Chatha*, 381 S.W.3d at 513–14 (agreeing that 180-day filing deadline in section 21.202 is statutory prerequisite to suit for TCHRA suits against governmental entities). Claims against governmental entities that are not timely filed are jurisdictionally barred. *Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 192–93 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Each discrete incident of discrimination constitutes a separate actionable unlawful employment practice. *Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 755 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (stating, in case under Title VII, that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'"). Discrete discriminatory acts are not actionable if time-barred, and each discrete

21

discriminatory act "starts a new clock for filing charges alleging that act." *Brantley*, 558 S.W.3d at 755. "Discrete acts that fall within the statutory time period do not make acts that fall outside the time period timely." *Id.* Hostile work environment claims, however, typically consist "of multiple discriminatory acts over a period of time," and therefore a charge alleging a hostile work environment "must be filed only within the statutory window of at least one of the acts that contributed to the hostile work environment." *Id.*; *Nat'l R.R. Passenger*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Poulos alleged that she filed her charge of discrimination with the Commission and the EEOC on October 13, 2021. The City argues that any claim based on conduct that occurred before April 16, 2021—180 days before Poulos filed her charge of discrimination—is untimely and does not waive the City's immunity. The City further contends that the only claims Poulos timely asserted related to absences from work and bathroom breaks, neither of which are actionable under the TCHRA and do not establish a hostile work environment. Poulos responds that in addition to these claims, she also timely asserted a claim that, following her surgery, her supervisor violated her accommodations by requiring her to lift heavy water bottles. The appellate record does not contain Poulos's charge of discrimination.

Because Poulos does not argue that we should address any claims based on conduct that occurred before April 16, 2021, we agree with the City that claims based on conduct occurring before this date are untimely and are jurisdictionally barred. *See* TEX. LABOR CODE § 21.202(a); *Chatha*, 381 S.W.3d at 513–14; *Parker*, 484 S.W.3d at 192–93. However, we conclude that Poulos's hostile work environment claim, which is based on conduct occurring both before and after April 16, 2021, is timely. *See Nat'l R.R. Passenger*, 536 U.S. at 117; *Brantley*, 558 S.W.3d at 755.

2. **Whether the claims Poulos timely raised in her charge of discrimination state a claim under the TCHRA**

a. **Poulos's race discrimination claim**

The TCHRA provides that an employer commits an unlawful employment practice if, because of race, the employer (1) "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment"; or (2) "limits, segregates, or classifies an employee . . . in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." TEX. LABOR CODE § 21.051(1).

A plaintiff may rely on direct or circumstantial evidence. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020). When a plaintiff relies on circumstantial evidence, we follow the burden-shifting framework

established by the United States Supreme Court. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Flores*, 612 S.W.3d at 305. Under this framework, (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305. At all times, the burden of persuasion remains with the employee. *Clark*, 544 S.W.3d at 782.

To establish a prima facie case of discrimination, the employee must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; and (3) non-protected class employees were not treated similarly. *Anderson*, 458 S.W.3d at 643. The TCHRA addresses only "ultimate employment decisions."[1] *Id.* at 644; *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d

---

[1]  As support for this construction of the TCHRA, this Court and some of our sister intermediate appellate courts have cited cases from the Fifth Circuit holding that Title VII was designed to address "ultimate employment decisions" and not every decision made by employers that might have a tangential effect on ultimate decisions. *See, e.g.*, *Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 308 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007)); *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995)); *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 142–43 (Tex. App.—Fort Worth 2000, pet. denied) (citing *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997), and *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)). Recently, however, the Fifth Circuit, sitting en banc

903, 909 (Tex. App.—El Paso 2015, no pet.) ("[A]n adverse employment action requires a significant change in employment status."). The statute "does not address 'every decision made by employers that arguably might have some tangential effect upon employment decisions.'" *Anderson*, 458 S.W.3d at 644 (quoting *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 142 (Tex. App.—Fort Worth 2000, pet. denied) (stating that TCHRA was "designed to address ultimate employment decisions, not every action that occurs in the workplace that makes an employee unhappy").

Generally, adverse employment actions involve hiring, granting leave, discharging, promoting, and compensating employees. *Anderson*, 458 S.W.3d at 644. Adverse employment actions do not include disciplinary filings, reprimands

---

concluded that limiting Title VII's anti-discrimination provision only to "ultimate employment decisions" was inconsistent with the language of Title VII itself. Thus, the court abandoned this requirement for demonstrating an adverse employment action. *See Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499–502 (5th Cir. 2023) (en banc). Fifth Circuit precedent, although persuasive authority, is not binding on this Court. In the absence of contrary authority from the Texas Supreme Court or this Court sitting en banc, we continue to be bound by our prior precedent holding that the TCHRA's anti-discrimination provision only applies to "ultimate employment decisions." *See Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (stating that under principles of horizontal *stare decisis*, panel of appellate court must follow "materially indistinguishable decisions of earlier panels of the same court" unless prior decision has been superseded by higher authority, such as decision by Texas Supreme Court or "an en banc decision of the court of appeals itself").

from a supervisor, poor performance reviews, hostility from fellow employees, verbal threats to fire, criticism of the employee's work, or negative employment evaluations. *Id.*

Poulos alleged that the City discriminated against her based on her race when "she was scrutinized to a higher level than her white coworkers and berated and humiliated before her peers by her supervisor" and "was held to a higher standard than her white coworkers, including higher scrutiny for her time and work performance." As part of this higher scrutiny, Poulos's supervisor allegedly required her to request permission before using the restroom, which her white co-workers did not have to do. She also alleged that she "was denied requests for leave days requested weeks in advance, while her white coworkers were allowed to leave early without prior notice."[2] The City argues that Poulos has not alleged that she has suffered an adverse employment action. We agree with the City.

---

[2] Poulos also alleged that she was "denied promotions she was qualified for in favor of white employees with less experience and qualifications." Poulos alleged that one of her less-experienced white coworkers was promoted to the position of Assistant Supervisor in April 2020, but Poulos and "her non-white colleagues were not given the opportunity to apply to this position." Because this action did not occur within 180 days of Poulos filing her charge of discrimination in October 2021, any complaints about this action are untimely. *See* TEX. LABOR CODE § 21.202(a); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513–14 (Tex. 2012); *Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 197 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding that claim for failure to promote was untimely because plaintiff filed EEOC charge more than 180 days after he was denied promotions). Poulos does not argue on appeal that her allegations concerning a promotion were timely.

Poulos's complaints that her supervisors scrutinized her more closely than her white coworkers and required her to obtain permission before using the restroom are not "ultimate employment decisions" under the TCHRA. *See id.* at 643; *Winters*, 132 S.W.3d at 575 (stating that TCHRA does not "address every decision made by employers that arguably might have some tangential effect upon employment decisions"); *see also Parker*, 484 S.W.3d at 196–97 (stating that blaming plaintiff for problems unrelated to job performance, badgering him over attendance and tardiness, screaming and yelling at him in front of his employees, writing him up for poor performance, lowering his performance evaluation, and scrutinizing, micro-managing, and criticizing him were not "ultimate employment decisions"); *Elgaghil*, 45 S.W.3d at 143 (stating that "[a]s a matter of law" actions including verbal harassment, write-ups for poor work performance, and threats of termination are not adverse employment decisions). Therefore, to the extent Poulos complains about these actions by the City, she has not stated a claim that is actionable under the TCHRA.

Poulos also alleged that she requested leave on June 16, 2021, to attend a medical appointment before a scheduled surgery, but her supervisor refused to approve the request. Poulos alleged that, on a previous occasion, one of her white co-workers "asked to leave early from work that same day" without providing any advance notice to her supervisor, and the supervisor granted the request. Although

this Court has stated that adverse employment actions include decisions "granting leave," *see Anderson*, 458 S.W.3d at 643, the parties have pointed to no binding authority holding that the denial of an employee's request to take one day of leave on a specific date constitutes an adverse employment decision.

The Fifth Circuit and the Southern District of Texas, however, have held that such a decision does not constitute an adverse employment action. *See McElroy v. PHM Corp.*, 622 F. App'x 388, 390–91 (5th Cir. 2015) (per curiam) (concluding that employer's denial of permission for employee to "leave work right away on a single day" for medical issue did not qualify as adverse employment action); *Beltran v. Univ. of Tex. Health Sci. Ctr. at Houston*, 837 F. Supp. 2d 635, 643 (S.D. Tex. 2011) (noting that courts routinely conclude that denial of short term vacation time is not adverse employment action). The Fifth Circuit has distinguished between (1) an employer's decision denying an employee's right to take leave or the amount of leave available and (2) an employer's decision affecting the specific date, time, and manner that leave is taken. *McElroy*, 622 F. App'x at 391; *see Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (per curiam) (stating, in retaliation case, that "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general, because a reasonable employee would not have found the action to be materially adverse"). Under Fifth Circuit precedent, the latter category of employer

decisions does not constitute adverse employment actions. *See Price v. Wheeler*, 834 F. App'x 849, 857 (5th Cir. 2020) (noting court's prior holdings that "a single denial of leave for a specific date and time" is not adverse employment action); *Ogden v. Brennan*, 657 F. App'x 232, 235 (5th Cir. 2016) (per curiam) (same); *McElroy*, 622 F. App'x at 391 (same).

Here, Poulos does not allege that she was denied the right to take leave or that the amount of leave that she was allowed was less than the amount allowed for co-workers of different races. Instead, she alleges that her supervisor denied her request for leave on a specific date to attend a medical appointment, while her supervisor had, in the past, allowed one of her white co-workers to take leave with no prior notice given. We conclude that this decision was not an adverse employment action under the TCHRA. *See Anderson*, 458 S.W.3d at 644 (stating that TCHRA only addresses "ultimate employment decisions"); *Esparza*, 471 S.W.3d at 909 ("[A]n adverse employment action requires a significant change in employment status."). We therefore conclude that Poulos has not alleged a prima facie case of discrimination based on the denial of requested leave. *See Anderson*, 458 S.W.3d at 643.

Because Poulos has not alleged an adverse employment action, we conclude that she has not alleged a prima facie case of race discrimination, and therefore this claim does not sufficiently allege a TCHRA violation such that the City's

governmental immunity is waived. *See Nicholas*, 461 S.W.3d at 135; *see also Clark*, 544 S.W.3d at 770 ("The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute."). We therefore hold that the trial court erred to the extent that it denied the City's Rule 91a motion to dismiss Poulos's race-discrimination claim.

### b. Poulos's hostile work environment claim

A hostile work environment claim "entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Anderson*, 458 S.W.3d at 646 (quoting *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.—Texarkana 2008, pet. denied)). The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Id.* If the employee complains of harassment by a supervisor, the employee needs only prove the first four elements. *Id.*

To satisfy the fourth element of a hostile work environment claim, the employee must show that the workplace was "permeated with discriminatory

intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 445 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The work environment must be both objectively and subjectively offensive—"one that a reasonable person would find hostile or abusive and one that the victim perceived to be so." *Id.* Although the "abusiveness" standard does not necessarily require "any tangible psychological impact on the victim," it does require "extreme conduct." *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 219 (Tex. App.—Austin 2010, no pet.). Incidental or occasional race-based comments, discourtesy, rudeness, or isolated incidents (unless those incidents are "extremely serious") "are not discriminatory changes in the terms and conditions of a worker's employment." *Univ. of Tex. Health Sci. Ctr. at Tyler v. Nawab*, 528 S.W.3d 631, 641 (Tex. App.—Texarkana 2017, pet. denied).

In determining whether a hostile work environment exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Donaldson*, 495 S.W.3d at 445; *Anderson*, 458 S.W.3d at 646. "The availability of a hostile work environment claim is intended to prohibit and prevent conduct that is so severe and pervasive that it destroys a protected class member's

31

opportunity to succeed in the workplace." *City of Houston v. Fletcher*, 166 S.W.3d 479, 490 (Tex. App.—Eastland 2005, pet. denied) (quotations omitted).

With respect to her hostile work environment claim, Poulos alleged that she was subjected to disparate treatment because her supervisor "would monitor and interrogate [Poulos] more than her white co-workers." She alleged that she "was held to a different standard for her attendance and break times compared to her white coworkers," who were able to leave early or sleep on the job without repercussions while Poulos "was harassed and questioned about her time and attendance." Poulos further alleged that she "was verbally assaulted by her supervisor and endured hostility and yelling on a frequent basis."

To make a prima facie case for a hostile work environment, however, the plaintiff must allege that the harassment that she complains of was based upon the protected characteristic. *See Parker*, 484 S.W.3d at 197; *Anderson*, 458 S.W.3d at 646. Although Poulos alleges that she was treated differently from her white coworkers in several respects, she makes no allegations that the harassment that she allegedly suffered was based upon her race. For example, she does not allege that her supervisors used racial slurs, made derogatory comments based on her race, or otherwise referenced her race in any of the allegedly harassing interactions with Poulos. *See Nawab*, 528 S.W.3d at 641 (stating that incident in which doctor of Indian descent "mocked [plaintiff's] Pakistani accent" "could be claimed to have

been based on race or nationality," but ultimately concluding that this incident and other comments and negative evaluations did not state prima facie case of race or nationality-based hostile work environment); *Barnes v. Prairie View A&M Univ.*, No. 14-15-01094-CV, 2017 WL 2602723, at *3 (Tex. App.—Houston [14th Dist.] June 15, 2017, pet. denied) (mem. op.).

Moreover, even if Poulos has alleged harassment based on her race, we agree with the City that she has not stated a prima facie case that the alleged harassment was so "severe or pervasive" that it affected a term, condition, or privilege of Poulos's employment. *See Donaldson*, 495 S.W.3d at 445; *Anderson*, 458 S.W.3d at 647. Poulos alleged that "[t]he harassment was severe and pervasive and interfered with [her] employment." She did not, however, allege any facts relating to how her work performance had been affected due to the alleged harassment. *See Anderson*, 458 S.W.3d at 647 (considering plaintiff's deposition testimony that supervisor's "conduct did not affect her ability to perform her work or the quality of her work").

Nor has Poulos alleged "extreme" conduct that affected the terms and conditions of her employment. *See Brantley*, 558 S.W.3d at 757–58 (concluding allegations that plaintiff was "falsely accused of disrespectful behavior and mistakes," called racial slur, told that female employees were afraid of him because he was "tall, Black and bald," told he might be shot if he wore hooded sweatshirt, was paid less than white, female employees, and was "stripped of his duties" were

33

not objectively severe or pervasive enough to affect term, condition, or privilege of employment); *Parker*, 484 S.W.3d at 198 (concluding plaintiff's allegations that his manager told another employee that "black males don't—don't work" and plaintiff was "just here to sit on the clock," coupled with allegations that plaintiff was blamed for problems unrelated to his performance, was required to "improperly write up" employees, was "badgered about attendance and tardiness," was "screamed and yelled at" in front of employees, was "written up for poor performance," had performance evaluation lowered, and "was scrutinized, micro-managed and constantly criticized" was not extreme and did not affect terms and conditions of employment).

We conclude that Poulos has not alleged a prima facie case of hostile work environment based on her race. *See Anderson*, 458 S.W.3d at 646. We therefore hold that the trial court erred to the extent that it denied the City's rule 91a motion to dismiss Poulos's hostile work environment claim. *See Clark*, 544 S.W.3d at 770 ("The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute.").

### c. Poulos's retaliation claim

Poulos also asserted a retaliation claim, alleging that she formally complained about the discrimination she was facing to "her director" on October 8, 2019, and he responded by "dismissing her concerns and threatening to issue her a formal write

up for voicing the inequality she was facing." Poulos alleged that following this complaint, she "was subjected to additional [harassment] by her supervisor and denied leave days requested for [her] surgical medical procedures." She alleged that she suffered an adverse employment action on August 6, 2021, when her supervisor allegedly ignored her medical restrictions and accommodations following her surgery and directed her to lift heavy water bottles. Poulos also alleged that she filed her EEOC charge on October 13, 2021, but the City "continued its biased and unfair treatment of [her] and refused to investigate or properly address [her] complaints through February 2022." She alleged that she "has continued to face additional [harassment] from her supervisors . . . following the filing of her EEOC charge." She further alleged that "[f]ollowing her EEOC complaint," she "has been assigned additional work without being compensated for the responsibilities and continues to be closely monitored with her bathroom breaks by her supervisor and harassed for any breaks or requests for time off."

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities. TEX. LABOR CODE § 21.055; *Anderson*, 458 S.W.3d at 647. To establish a prima facie case for retaliation, the employee must show: (1) she engaged in an activity protected by the TCHRA; (2) she experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Clark*, 544 S.W.3d at 782;

35

*Anderson*, 458 S.W.3d at 647. "Protected activities" under the TCHRA consist of: (1) opposing a discriminatory practice; (2) making or filing a charge of discrimination; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. TEX. LABOR CODE § 21.055; *Anderson*, 458 S.W.3d at 647.

Retaliation and race-based discrimination are distinct legal theories. *See Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 809 (Tex. App.—Austin 2009, no pet.) ("Retaliation is a different legal theory from race-based discrimination."); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890, 894 (Tex. App.—Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA . . . ."); *see also Clark*, 544 S.W.3d at 763 ("A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not."). In the retaliation context, unlike in the context of a racial discrimination claim, the "adverse employment action" is not limited to "ultimate employment decisions." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The employee must show that a reasonable employee would have found the challenged action "materially adverse," meaning that the action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68; *Clark*, 544 S.W.3d at 788. "[N]ormally, petty slights, minor

36

annoyances, and simple lack of good manners will not create such deterrence." *White*, 548 U.S. at 68; *Navy*, 407 S.W.3d at 901.

In its Rule 91a motion to dismiss, the City did not differentiate between Poulos's claim for racial discrimination and her claim for retaliation. The City did not address retaliation in the motion other than to state that for discrimination and retaliation cases, "Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII" and that a plaintiff "must demonstrate a *prima facie* case of discrimination or retaliation under the requirements of the TCHRA" to establish a waiver of immunity. The City argued that Poulos failed to allege facts showing an adverse employment action, but it did not address the distinction between adverse employment actions in the racial-discrimination context and in the retaliation context. On appeal, aside from summarily stating that Poulos failed to demonstrate a prima face case of retaliation, which she must do to establish a waiver of immunity, the City does not address the elements of a retaliation claim or analyze how Poulos's pleadings fail to state a prima facie case on this claim.

A Rule 91a motion to dismiss "must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." TEX. R. CIV. P. 91a.2; *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 606 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.).

Even though the City raises an immunity challenge in its Rule 91a motion, the City must still follow the procedural requirements specifically set out in that rule. *See Reaves*, 518 S.W.3d at 606–07 (concluding that case must be "judged under the constraints of rule 91a, since that is the procedural framework which the City's motion invoked, upon which the appellants relied, and by which the trial court decided this case" and declining "to apply the rules applicable to pleas to the jurisdiction to the extent that they differ from rule 91a"). We conclude that the City failed to specifically state the reasons why Poulos's cause of action for retaliation has no basis in law. We hold that the trial court therefore did not err to the extent that it denied the City's motion to dismiss this claim.

We sustain the City's second issue in part.[3]

---

[3] We note that Rule 91a's dismissal procedure is "in addition to, and does not supersede or affect, other procedures that authorize dismissal." TEX. R. CIV. P. 91a.9.

## Conclusion

We affirm the order of the trial court to the extent that it denied the City's Rule 91a motion to dismiss Poulos's retaliation claim. We reverse the order of the trial court to the extent that it denied the City's Rule 91a motion on (1) Poulos's race-discrimination claim and (2) Poulos's hostile work environment claim. We render judgment dismissing these two claims.

April L. Farris
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.